NUMBER 13-04-327-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

EFRAIN AVILA YANEZ,                                             Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 206th
 District Court

                           of Hidalgo
County, Texas.

 

 

 

                              O P I N I O N

 

                     Before Justices Hinojosa, Yañez, and
Castillo

                                  Opinion by Justice Castillo

 








A jury convicted
appellant Efrain Yanez of capital murder of a child and attempted murder of the
child's mother and stepfather.[1]  The trial court assessed the automatic life
sentence on the capital murder offense, and a jury assessed punishment at a
life sentence on the second count, after finding the enhancement allegation
true.  The trial court ordered both
sentences to run concurrently in the Institutional Division of the Texas
Department of Criminal Justice.  By four
issues, Yanez asserts that the trial court reversibly erred by (1) denying a
pretrial hearing on his motion to testify free from impeachment, (2) admitting
evidence, (3) disallowing prior conviction impeachment evidence of one of the
victims, and (4) denying a lesser included offense jury instruction on the
capital murder charge.  We affirm.

I.  BACKGROUND

A.  Relevant Facts

Alleging capital
murder, Count1of the indictment states Yanez intentionally and knowingly caused
the death of Klarissa Danielle Duran, a child younger than six years of age, by
shooting her with a firearm, enhanced. 
Alleging attempted capital murder, Count 2 states that Yanez
intentionally and knowingly attempted to kill Roberto Duran and Romelia Palomo,
also enhanced.  Palomo and Yanez had a
minor son, Junior, who was thirteen years old at the time in question.  A divorce granted Yanez standard visitation
rights.  Palomo married Duran.  Klarissa was their child. 








On May 28, 2003, Yanez
called Palomo to request visitation with Junior.  Palomo denied the request because the family
was on the way to visit a relative who had a baby at a nearby hospital.  A few minutes later, Yanez arrived at the
house in a 1996 black Kia Sephia, requested to see his son, and accused Palomo
of distancing Junior from Yanez.  Junior
visited with Yanez outside the residence until the family was ready to leave.  On her way to the family car, Palomo asked
Junior to visit with Yanez the following day. 
Duran sat in the driver's seat, Palomo sat in the front passenger seat,
and Klarissa sat in the rear passenger seat. 
Junior sat in the back seat with his step-sister Klarissa, and closed
the door.  Meanwhile, through his rear
view mirror, Duran saw Yanez approach the driver's side of the vehicle.  Duran rolled down his window.  Duran testified that the next and last thing
he saw before Yanez shot him in the face was the barrel of a gun.         








Palomo testified that
she saw Yanez approach the driver side window, heard the first shots, and then
felt pain in her leg.  She got out of the
car and saw Yanez open the back door of the car.  Junior had left the car.  Palomo saw Yanez hold the gun and aim it into
the back seat of the car.  Palomo heard
the gun click twice indicating to her that the gun was out of bullets.  She attempted to move around the back of the
car while pleading with Yanez not to hurt her daughter who was still in the
back seat.  Palomo saw Yanez reload the
gun.  Yanez walked toward Palomo and shot
her again in the leg.  She fell to the
ground.  She next saw Yanez place half
his body in the vehicle and shoot twice into the back seat of the car.  Without saying a word, Yanez went back to his
vehicle and fled the scene.  A neighbor,
observing the shooter from the top of a roof, testified he saw the shooter
enter the car halfway and then the neighbor heard two shots fired.  Four years old at the time of her death,
Klarissa died as the result of two gunshot wounds to the head.  Yanez was eventually apprehended and pled not
guilty to the charges. 

B.  Relevant Procedural History

The defense filed
numerous pre-trial motions, including (1) a motion to suppress the evidence
that was found in the glove compartment of the Kia, (2) a motion for a pretrial
hearing to testify free of impeachment,[2]
and (3) a motion to impeach the credibility of a potential witness, the victim
Roberto Duran, with prior convictions. 
The trial court deferred ruling on the merits of the motion to testify
free of impeachment.  At trial, the
defense objected at the time the State introduced the glove compartment
evidence.  Prior to cross-examination of
Duran, the trial court revisited the State's motion in limine as to impeachment
evidence of Duran's prior felony convictions. 
At a hearing outside the presence of the jury, the trial court ruled
that, because Duran's most recent conviction and incarceration were more then
ten years prior to the date of the offense, Yanez could not use Duran's felony
convictions to impeach him.

During the charge
conference, the defense requested a manslaughter instruction, arguing that the
lesser charge of manslaughter was supported by the evidence and would provide
the jury with the range of mental states defined in the penal code.  The trial court denied the request.  After the jury's guilty verdict, the trial
court entered the judgments of conviction and sentence on the two counts.  The trial court denied Yanez's motion for new
trial.  This appeal ensued.

II.  MOTION FOR RULE 609 PRETRIAL HEARING








By his first issue,
Yanez asserts that the trial court committed reversible error  by denying a pretrial hearing on his rule
609(a) motion to testify free from impeachment through prior convictions.[3]  He maintains that article 28.01 of the Texas
Code of Criminal Procedure and Theus v. State, 845 S.W.2d 874 (Tex.
Crim. App. 1992), required the trial court to provide him a pretrial
opportunity to contest the use of such evidence.  See Tex.
Code Crim. Proc. Ann. art. 28.01 (Vernon 1989).  The State responds that the trial court did
not err by deferring a ruling on the motion pending trial proceedings and Yanez
did not preserve error by not obtaining an adverse ruling at trial.  

A.  The Record








By his motion, Yanez
sought, in part, a preliminary determination that impeachment evidence of his
prior convictions was more prejudicial than probative.  He sought an opportunity, pretrial, to
contest the objectionable evidence on grounds that rule 609(f)[4]
and Theus afforded him the right to contest the State's use of such
evidence.  Yanez presented his request to
the trial court for a pretrial hearing during a pretrial conference.  The trial court deferred a ruling.  By not granting the pretrial hearing
requested, the trial court implicitly denied his motion. Tex. R. App. P. 33.1(a)(2).[5]  The question before us is whether the
implicit denial of a pretrial hearing to contest the State's impeachment
evidence constitutes reversible error. 

B.  Standard of Review








We review a ruling on
the denial of a pretrial hearing on an evidentiary motion for abuse of
discretion.  See Cox v. State, 843
S.W.2d 750, 752 (Tex. App.B El Paso 1992, pet.
ref'd) (holding, in the context of a motion to suppress, that the decision of
whether or not to conduct a pretrial hearing on a motion to challenge the
admissibility of evidence rests within the sound discretion of the trial
court).  Such discretion permits trial
courts, upon proper objection, to elect to determine the admissibility of the challenged
evidence during the trial on the merits. Id.  An abuse of discretion occurs when the trial
court acts arbitrarily or unreasonably without reference to any guiding rules
or principles.  Montgomery v. State,
810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc).  In other words, an abuse of discretion occurs
only when the trial court's decision is so clearly wrong as to lie outside that
zone within which reasonable persons might disagree.  Id. at 391.  Still, we need not reverse if we determine
that the error did not affect appellant's substantial rights.  Tex.
R. App. P. 44.2(b).  In other
words, we need not reverse if, after examining the record as a whole, we have
fair assurance that the error did not influence the jury's deliberations to
appellant's detriment or had but a slight effect.  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998); King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997).  Furthermore, if we can
uphold the trial court's decision on any theory applicable to the case, we will
do so.  Metts v. State, 22 S.W.3d
544, 550 (Tex. App.BFort Worth 2000, pet.
ref'd).

C.  Discussion

1.  Denial of a Pretrial Hearing








Specifically, in his
motion, Yanez requested that the trial court "conduct an evidentiary
hearing to determine the admissibility of impeachment evidence" before
trial on the merits.  In effect, he
requested that the trial court convene a pretrial evidentiary hearing, conduct
a rule 609 balancing test, and rule on the impeachment evidence.  In substance, his motion constituted a motion
to suppress impeachment evidence of prior convictions, on grounds that the
evidence was more prejudicial than probative, after a rule 609 balancing test
pretrial.  See Tex. Code Crim. Proc. Ann. art. 28.01, _ 1(6) (Vernon 1989); Tex. R. Evid. 103; see also Hill v.
State, 643 S.W.2d 417, 419 (Tex. App.B Houston [14th Dist.]
1982), aff'd, 641 S.W.2d 543 (Tex. Crim. App. 1982)(citing Galitz v.
State, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (holding that a
motion to suppress is a specialized objection regarding the admissibility of
evidence)).[6]  Article 28.01 is not mandatory upon the trial
court but is directed to the court's discretion.  Calloway v. State, 743 S.W.2d 645, 649
(Tex. Crim. App. 1988).  The court may
elect to determine the merits of the motion at the time when the subject matter
of the motion is first brought before the court during trial, rather than at a
pre‑trial hearing.  Id. at
649; Bell v. State,  442 S.W.2d
716, 719 (Tex. Crim. App. 1969). 
Further, a determination on the admissibility of evidence is to be made
by the trial court alone.  Neither the
Court of Criminal Appeals nor the Legislature has mandated that a trial court
must, as a matter of course, make such a determination prior to trial on the
merits.  Yanez's reliance on Theus
for the proposition that the trial court reversibly erred in denying a hearing
on his pretrial motion is of no moment because it does not mandate a
pretrial hearing; rather, Theus instructs as to when prior convictions
are admissible for impeachment purposes. 
Theus,  845 S.W.2d at
874.  








Similarly, rule 609 of
the rules of evidence requires that the trial court determine whether the
probative value of admitting evidence of prior convictions outweighs its
prejudicial effect to a party.  Tex. R. Evid. 609(a).  Rule 609(f), which Yanez cites, requires
timely notice of the State's intended use of evidence of prior convictions to
provide the defendant "a fair opportunity to contest the use of such
evidence."  Tex. R. Evid. 609(f). 
The phrase "fair opportunity" does not specify at what point
in the proceedings the decision as to admissibility is to be made.  We find no authority, and Yanez does not
direct us to any, holding that a "fair opportunity" means an
opportunity exclusively during a pretrial hearing and not during a hearing
outside the presence of the jury during a trial on the merits.  See
Tex. R. Evid. 103(c); Calloway, 743 S.W.2d at 649; Bell,
442 S.W.2d at 719.  By its implicit
ruling, the trial court elected to determine the admissibility of the evidence
during the trial and, indeed, offered to revisit the matter during trial.  A trial court does not abuse its discretion
when its decision is within the zone of reasonable disagreement.  Montgomery, 810 S.W.2d at 391.  In that regard, we conclude that the trial
court did not abuse its discretion in failing to conduct a pretrial hearing to
determine the admissibility of impeachment evidence.[7]  Calloway, 743 S.W.2d at 649; Bell,
442 S.W.2d at 719. 

2.  Harm








Even assuming error,
the record does not establish harm.  Tex. R. App. P. 44.2; Tex. R. Evid. 103(d); Kombudo v.
State, 171 S.W.3d 888 (Tex. Crim. App. 2005) (compelling an appellate court
to address "even an alternative argument in an appellee's
reply").  Any "error, defect,
irregularity, or variance" other than constitutional error "that does
not affect substantial rights must be disregarded."  Tex. R. App. P.
44.2(b).  A substantial right is affected
"when the error has a substantial and injurious effect or influence in
determining the jury's verdict."  Rich
v. State, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (citing Russell v.
State, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005)); Morales v. State,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000); accord, King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
In evaluating harm, the appellate court should consider everything in
the record.[8]  Rich, 
160 S.W.3d at 577; Bagheri v. State, 119 S.W.3d 755, 763 (Tex.
Crim. App. 2003).  It is the
responsibility of the appellate court to assess harm after reviewing the
record, and the burden to demonstrate whether the appellant was harmed by a
trial court error does not rest on the appellant or the State.  Johnson v. State, 43 S.W.3d 1, 5 (Tex.
Crim. App. 2001).













Yanez did not inform
the trial court, either during the pretrial conference or during trial, that he
would testify.  Because Yanez elected not
to testify, by definition, the State could not use his prior conviction for
impeachment and the jury was not exposed to the allegedly prejudicial
evidence.  Yanez, however, contends that
the trial court's ruling in effect prevented him from testifying, for fear of
the State's expected use of the prior conviction for impeachment.  On this rationale, all rulings on evidentiary
motions would have some effect on the defendant's trial strategy.  Benavides v. State, 763 S.W.2d 587,
590 (Tex. App.BCorpus Christi 1988,
pet. ref'd.).  This effect, however, is
too speculative to preserve error on the basis of the ruling alone.  Id. 
(citing Luce v. United States, 469 U.S. 38, 43 (1984); Richardson
v. State, 733 S.W.2d 947, 956 (Tex. App.BAustin 1987 ), vacated on other grounds,
761 S.W.2d 19 (Tex. Crim. App. 1988)). 
To raise and preserve for review the claim of improper impeachment with
a prior conviction, a defendant must testify because without his testimony
there can be no impeachment evidence on prior convictions.  See Tex.
R. Evid. 103(c); see also Benavides, 763 S.W.2d at 590.  An accused cannot refuse to adduce evidence
in anticipation of improper impeachment and then secure a reversal on grounds
that he was denied the opportunity to contest impeachment evidence.  Id. 
Unless the defendant testifies, it is a matter of conjecture whether
the trial court would have allowed the State to attack his credibility at trial
by means of the prior conviction.  Id.  To analyze the trial court's weighing of a
prior conviction's probative value against its prejudicial effect, as required
by rule 609(a)(1), the reviewing court must know the precise nature of the
defendant's testimony.  Id.
(citing Luce, 469 U.S. at 41). 
Because Yanez did not testify, the impact any erroneous impeachment may
have had in light of the record as a whole is not affirmatively demonstrated in
the appellate record.  Id.  Thus, any possible harm flowing from a trial
court's refusal to conduct a pretrial hearing on impeachment by a prior
conviction is wholly speculative.  Id.  The record does not show the reason for
Yanez's failure to testify.  Furthermore,
the record includes eyewitness testimony by victims of the offense.  Yanez has not shown harm.

We conclude that the
trial court's implicit denial of Yanez's motion for a pretrial hearing on his
rule 609 motion is neither an abuse of discretion nor reversible error.  We overrule Yanez's first issue. 

III.  MOTION TO IMPEACH WITNESS WITH PRIOR
CONVICTIONS








Because Yanez's third
issue is also based on rule of evidence 609, we address it next.  Yanez asserts that the trial court reversibly
erred by disallowing impeachment of victim Roberto Duran through his prior
felony convictions.  He asserts that the
trial court erroneously ruled that more than ten years had passed since Duran's
release from confinement and did not perform the balancing test as required by
rule 609(b), and, alternatively, the probative value of the impeachment
evidence substantially outweighs its prejudicial effect.  The State responds that the trial court did
not err in its determination that Duran's convictions and release date exceeded
the ten year limitation for purposes of admission of impeachment evidence under
rule 609(b).[9]  Tex.
R. Evid. 609(b).  The State
further responds that Yanez abandoned his alternative claim that the probative
value outweighs the prejudicial effect.

A.  The Record








The State filed a
motion in limine requesting that the defense approach the bench before
addressing Duran's convictions and extraneous offenses.  During the pretrial conference, Yanez
requested permission to impeach Duran with prior felony convictions.  After commenting that probative value was not
evident, the trial court granted the State's motion in limine.  During the trial, Yanez renewed his request
to use Duran's prior felony convictions for impeachment.  The trial court convened a hearing outside
the presence of the jury.  During
cross-examination in that hearing, Duran admitted to three prior felony
convictions.  He was arrested for
burglary of a habitation on September 23, 1985, pleaded guilty on February 28,
1986, and was sentenced to an eight-year prison term when probation was revoked
for the subsequent offense.  Duran was
arrested on September 21, 1986, for burglary of a building, pleaded guilty on
January 21, 1987, and was sentenced to an eight-year prison term that ran
concurrently with the burglary of a habitation offense.  He was released from prison on the burglary
offenses in 1988[10]
and, because of the attempted murder charge, his parole was revoked, and the
original sentence was reinstated.  

Duran was next
arrested on October 30, 1988 for attempted murder.  A jury convicted him of the lesser offense of
aggravated assault.  On July 3, 1989, he
was sentenced to a ten-year prison term. 
He was released on parole in 1990 for the aggravated assault conviction,
the most recent, having served less than a year in prison.  Duran testified, "I did all my 10 years
parole" on that conviction.  Duran
agreed that a document, which defense counsel showed him in court but was not
admitted in evidence, demonstrated he was paroled for the aggravated assault
offense "until October 27, 1998." 

Yanez renewed his
request to impeach Duran on grounds that the rule 609(b) ten-year limitation
did not preclude use of the prior felony convictions because both terms of
confinement in prison would have extended to the year 1994.  The trial court  denied Yanez's oral motion and offered Yanez
the opportunity to revisit the issue, should Yanez provide authority supporting
his argument that the term "confinement" in rule 609(b) meant the
"sentence" imposed and not prison time served.  Yanez cross-examined Duran without additional
request to allow impeachment with prior convictions.

 








B.  Standard and Scope of Review

We review a ruling
that disallows use of a prior conviction to impeach a witness for a clear abuse
of discretion.  See Theus, 845
S.W.2d at 881; Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App.
2002) ("The admissibility of evidence is within the discretion of the
trial court and will not be reversed absent an abuse of discretion."  (citations omitted)).  If the trial court's decision to admit a
prior conviction lies outside the zone of reasonable disagreement, an appellate
court should not hesitate to reverse the trial court's determination.  Id. (citing Montgomery, 810
S.W.2d at 391).  Even if the trial court
gave the wrong reason for its decision, the decision will be upheld as long as
it is correct on some theory of law applicable to the case.  Osbourn, 92 S.W.3d at 538; Salas v.
State, 629 S.W.2d 796, 799 (Tex. Crim. App. 1981).  Even if there is no legal basis to support
the ruling, the reviewing court must still disregard the error unless it
affected the defendant's substantial rights. 
See Tex. R. App. P.
44.2(b).








Because rule 609 is
broad enough to encompass a defendant's impeachment of a State's witness with a
prior conviction, any proponent seeking to introduce evidence pursuant to rule
609 has the burden of demonstrating that the probative value of a conviction
outweighs its prejudicial effect.  Theus,
845 S.W.2d at 880.  Five factors are to
be considered by the court in determining whether to admit the evidence of
prior felony convictions:  (1)
impeachment value, (2) temporal proximity, (3) similarity, (4) probative versus
prejudicial value, and (5) importance of testimony and credibility.  Id., 845 S.W.2d at 881-83.

C.  Applicable Law

Yanez maintains that
the denial of the opportunity to cross-examine and attack the credibility of
Roberto Duran with his prior convictions is reversible error.  In general, rule 609(a) authorizes the use of
felony convictions or crimes of moral turpitude for impeachment purposes if the
trial court determines that the probative value of admitting this evidence
outweighs its prejudicial effect to a party. 
Tex. R. Evid. 609(a).  Rule 609(b) specifies that evidence of a
conviction is not admissible if a period of more than ten years has elapsed
since (1) the date of the conviction or (2) of the release of Duran from
confinement imposed for that conviction, "whichever is the later date,
unless the court determines, in the interests of justice, that the probative
value of the conviction supported by specific facts and circumstances
substantially outweighs its prejudicial effect."  Tex.
R. Evid. 609(b).

D.  Discussion

1.  Remote Convictions

The date of Yanez's
offenses is May 28, 2003.  The date of
the trial is June 24, 2004.  Rule 609(b)
fixes the ten year limitation on "the date of the conviction or of the release
from confinement."  Tex. R. Evid. 609(b).  













The sole evidence
before the trial court was that Duran was released from prison on the most
recent felony offense in 1990 and successfully completed his ten-year parole
term.  The evidence establishes that more
than ten years have elapsed since Duran's release from the confinement imposed
for his convictions[11]
and either the date of the offense or the date of trial.  We conclude that the trial court did not
abuse its discretion on grounds that the convictions were inadmissible as too
remote in time under rule 609(b).  Tex. R. Evid. 609(b); see
Montgomery, 810 S.W.2d at 381.        Yanez further asserts that he was
reversibly denied the opportunity to impeach Duran on grounds that rule 609(b)
of the rules of evidence provides that, even if the conviction occurred more
than ten years ago, the interests of justice demanded that the trial court
allow the requested impeachment.  See
Tex. R. Evid. 609(b).  The trial court denied the motion because the
last date of confinement was over ten years prior and Yanez had not presented
sufficient proof that the nature of the prior felonies (two burglaries and one
aggravated assault) were relevant to the facts or credibility of the
witness.  By its ruling, the trial court
implicitly rejected the "interest of justice" exception in rule
609(b).  As the proponent seeking to
introduce evidence pursuant to rule 609(b), Yanez had the burden of
demonstrating that the probative value of a conviction outweighed its
prejudicial effect.  Theus, 845
S.W.2d at 880.  He did not do so.  In fact, during the evidentiary hearing convened
outside the presence of the jury, he did not address the probative/prejudicial
argument he advances on appeal and thus did not preserve error.  See
Tex. R. App. P. 33.1.  Even
assuming he preserved error, we need not address Yanez's argument that the
impeachment evidence was more probative than prejudicial under the Theus
factors because the trial court's ruling is supported on the theory of
remoteness as applicable by rule 609(b). 
See Osbourn, 92 S.W.3d at 538; Salas, 629 S.W.2d at 799; see
also Tex. R. App. P. 47.1.  

2.  Harm

Even assuming error,
we must disregard the error unless it affected Yanez's substantial rights.  See
Tex. R. App. P. 44.2(b); Rich, 160 S.W.3d at 577.  Yanez asserts that, considering the entirety
of Duran and Palomos' testimony, he was harmed because Duran was portrayed as,
among other things, selfless, cooperative, and non-confrontational.  However, Palomo also testified that Yanez
involved law enforcement numerous times when effecting visitation with Junior
due to the escalating tensions between Yanez and Palomo involving visitation.[12]  On the date in question, Yanez arrived at the
residence unannounced and unaccompanied by law enforcement.  








Regardless of whether
the jury believed any of Duran's testimony, other testimony reveals that Yanez
shot and killed four-year-old Klarissa, who was seated in the back seat of the
family's vehicle, after he shot both Duran and Palomo.  Therefore, even if the evidence of Duran's
prior convictions were introduced and his credibility compromised, sufficient
other evidence existed such that reasonable minds could convict Yanez.  Such other evidence includes the eyewitness
testimony of Palomo, who remained steadfast on her identification of Yanez as
the shooter, and a neighbor, who from a roof top observed the shooter's
actions.  Yanez has not demonstrated that
the impeachment or probative value of the prior conviction evidence would have
any effect on all the other evidence presented at trial or provided proof that
the credibility of Duran was essential to establish facts.  

After considering the
entire record, as we must, in evaluating harm, we cannot conclude that the
complained-of error had a substantial and injurious effect or influence in determining
the jury's verdict.  Tex. R. App. P. 44.2(b); Rich,
160 S.W.3d at 577.  We overrule Yanez's
third issue.

IV.  ADMISSION OF EVIDENCE

By his second issue,
Yanez asserts that the trial court reversibly erred by admitting as hearsay
documents seized from his mother's vehicle pursuant to a search warrant.  The State counters that the documents were
properly admitted because they were not offered for the truth of the matters
asserted and thus were not hearsay.

A.  Standard of Review








A trial court's
admission or exclusion of evidence is reviewed under an abuse of discretion
standard.  Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002); Salazar v. State, 38 S.W.3d 141,
153‑54 (Tex. Crim. App. 2001); Montgomery, 810 S.W.2d at 379; see
also Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994)
(holding that a ruling on admissibility of an out‑of‑court
statement under a hearsay exception is within the trial court's discretion,
subject to review only for abuse of discretion). 

B.  The Record

Palomo testified that
the week before the shootings, while Yanez visited with Junior at the
residence, she wrote down the license plate number of the vehicle Yanez
operated out of an inexplicable concern that something might arise and it would
be needed.  Through photographs admitted
in evidence, she identified the Kia as the vehicle Yanez drove to and from the
crime scene.  Sergeant Javier J. Castro
testified that he was given an eyewitness description of the vehicle Yanez
drove from the crime scene and its license plate number.  Castro was instructed to go to the residence
of Yanez's mother, Maria Antonia Avila-Yanez, to locate Yanez.  Upon arrival at the residence of Avila-Yanez,
Castro observed the Kia parked in the driveway and noticed the hood of the vehicle
was hot to the touch.  He testified that
he knocked on the door, Avila-Yanez answered, and she permitted a search of the
house for Yanez.  Yanez was  not there. 
The vehicle was impounded that day with Avila-Yanez's consent.  Crime scene investigator Joel Castro
testified that a search warrant was issued and executed on May 30, 2003.  The vehicle was inventoried, and documents
obtained from the glove compartment included (1) a worksheet from Yanez's
workplace, (2) two receipts from motels, one in Yanez's name and the other in
his mother's name, (3) a church bulletin, and (4) a paper with handwritten
notes.








C.  Applicable Law

Hearsay is a
"statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted."  Tex. R. Evid. 801(d); see also Tex. R. Evid. 801(c). 
A "statement" is, in part, an oral or written verbal
expression.  Tex. R. Evid. 801(a). 
Statements that qualify as hearsay are inadmissible at trial unless an
applicable exclusion applies.  Tex. R. Evid. 802.  A statement not offered to prove the truth of
the matter asserted is not hearsay.  Dinkins
v. State, 894 S.W.2d 330, 347‑48 (Tex. Crim. App. 1995) (holding that
an appointment book and patient application form were not hearsay when
"tendered . . . to show how appellant became a suspect in the
investigation," not for the truth of the matter asserted); see Jones v.
State, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) (holding that statements
offered for the purpose of explaining how a defendant became a suspect and not
for the truth of the matter asserted are not hearsay testimony); Cano v.
State, 3 S.W.3d 99, 110 (Tex. App.BCorpus Christi 1999,
pet. ref'd) ("This is because the testimony assists the jury's
understanding of the events by providing context for the police officer's
actions.").  

D. Discussion








The State maintains
that the documents were not admitted to prove the truth of the matters asserted
but to show that Yanez had access to the vehicle.  Ample evidence demonstrated that Yanez fled
the crime scene in the Kia from which the documents were seized.  The trial court could have reasonably
concluded that the documents were received for the purpose of showing how the
investigation focused on Yanez.  Thus,
the trial court could have reasonably concluded that the documents were not
hearsay because they were not offered for the truth of the matters asserted but
to show the circumstances surrounding the investigation and leading to Yanez's
arrest.  See Cano, 3 S.W.3d at
110.  We conclude that the trial court's
overruling the objection to exclude the documents as inadmissible hearsay was
within the zone of reasonable disagreement and, thus, not an abuse of
discretion.  Montgomery, 810
S.W.2d at 379.  

E.  Harm

Even assuming the
evidence was inadmissible, we find no harm.  Tex. R. App. P. 44.2(b).  The admission of inadmissible hearsay
constitutes non-constitutional error, and it will be considered harmless if the
appellate court, after examining the record as a whole, is reasonably assured
that the error did not influence the jury verdict or had but a slight
effect.  Tex. R. App. P. 44.2(b); see Johnson, 967 S.W.2d at
417; Broderick v. State, 35 S.W.3d 67, 74 (Tex. App.BTexarkana 2000, pet.
ref'd).  

Other than connecting
Yanez to the vehicle, the documents contain nothing inherently harmful or
prejudicial.  Palomo's eyewitness
identification of both Yanez as the shooter and the Kia as the getaway car lead
us to conclude that admission of the complained-of evidence did not affect
Yanez's substantial rights.  Tex. R. App. P. 44.2(b); Rich,
160 S.W.3d at 577; Motilla v. State, 78 S.W.3d 352, 355-56 (Tex. Crim.
App. 2002).








We overrule Yanez's
second issue.

V.  LESSER INCLUDED OFFENSE

By his fourth issue,
Yanez asserts that the trial court reversibly erred in denying his request for
a jury charge instruction on the lesser included offense of manslaughter as to
Count One, the capital murder charge. 
The State counters that there is no evidence supporting Yanez's theory
that Klarissa was killed recklessly and, thus, the trial court properly denied
the requested instruction.

A.  Scope and Standard of Review

We review a trial
court's refusal to include a lesser included offense in the jury 

charge to see if there
is some evidence establishing the lesser included offense.  See Rousseau v. State, 855 S.W.2d 666,
672 (Tex. 1993).  Anything more than a
scintilla of evidence is sufficient to entitle a defendant to a lesser
charge.  Jones v. State, 984
S.W.2d 254, 257 (Tex. Crim. App. 1998) (citing Bignall v. State, 887
S.W.2d 21, 23 (Tex. Crim. App. 1994)). 
We review all of the evidence presented at trial to determine if the
trial court erred by failing to give a charge on a lesser included offense.  Rousseau, 855 S.W.2d at 673.  When reviewing whether a trial court erred by
refusing to include an instruction on a lesser included offense in the jury
charge, we do not address the weight and credibility of the defendant's version
of events.  See Saunders v. State,
840 S.W.2d 390, 391 (Tex. Crim. App. 1992). 


B.  Applicable Law








Article 37.09 of the
Texas Code of Criminal Procedure provides, among other things, that an offense
is a lesser‑included offense if (1) it is established by proof of the
same or less than all the facts required to establish the commission of the
offense charged, or (2) it differs from the offense charged only in the respect
that a less culpable mental state suffices to establish its commission.  Tex.
Code Crim. Proc. Ann. art. 37.09(1), (4) (Vernon 1981). The test for
submission of a jury charge requires that (1) the lesser included offense must
be included within the proof necessary to establish the offense charged; and
(2) some evidence must exist in the record that if the defendant is guilty, he
is guilty only of the lesser offense, or, in other words, the defendant is not
guilty of the greater offense but is guilty of the lesser.  Pickens v. State, 165 S.W.3d 675, 679
(Tex. Crim. App. 2005) (citing Hampton v. State, 109 S.W.3d 437, 440
(Tex. Crim. App. 2003); Rousseau, 855 S.W.2d at 672).   

C.  Discussion

The trial court denied
Yanez's request for a lesser included offense instruction on manslaughter.  We will now undertake the two-part analysis.

1.  Is manslaughter within the proof necessary to
establish capital murder?

The first prong
requires that a lesser included offense be included within the proof necessary
to establish the offense charged.  Pickens,
165 S.W.3d at 679.  A person commits the
offense of manslaughter if he recklessly causes the death of an individual.  Tex.
Pen. Code Ann. ' 19.04(a) (Vernon
2005).  Involuntary manslaughter may be a
lesser included offense of murder and consequently of capital murder.  Adanandus v. State, 866 S.W.2d 210,
232 n. 21 (Tex. Crim. App. 1993).  








Because the requested
charge is a lesser included offense of the offense charged, we conclude the
first part of the test for determining whether a defendant is entitled to an
instruction on a lesser offense is satisfied. 
See Pickens, 165 S.W.3d at 679; Hayward v. State,
158 S.W.3d 476, 478 (Tex. Crim. App. 2005). 
However, just because a lesser offense is included within the proof of
the offense charged does not mean that a charge on the lesser offense is
required.  Broussard v. State, 642
S.W.2d 171, 173‑74 (Tex. Crim. App. 1982).  The charge will be required only if there is
evidence which shows that if the appellant is guilty, he is guilty only of the
lesser offense.  Pickens, 165
S.W.3d at 679; see Wesbrook v. State, 29 S.W.3d 103, 113 (Tex. Crim.
App. 2001) (holding that the evidence must establish that the lesser included
offense is a valid rational alternative to the charged offense).  Thus, we turn to the second part of the
test.  

2.  Is Yanez not guilty of capital murder but
guilty of manslaughter?








The second prong
acknowledges that there are factual circumstances in which an offense is indeed
a lesser included offense under the first prong, but a jury‑charge
instruction will not be required because the condition that the defendant is
not guilty of the greater offense but is guilty of the lesser is not met.  Pickens, 165 S.W.3d at 679.  In such a case, the offense remains a lesser
included offense, but the trial court is not required to instruct the jury on
it.  Id.  There are two ways the evidence may indicate
that a defendant is guilty only of the lesser offense:  (1) there may be evidence that refutes or
negates other evidence establishing the greater offense; and (2) the evidence
presented may be subject to different interpretations.  Saunders v. State, 840 S.W.2d 390, 391
(Tex. Crim. App. 1992).  If evidence from
any source raises the issue of a lesser included offense, a charge on that
offense must be included in the trial court's charge.  Id. at 391.  However, if a defendant either offers
evidence that he committed no offense or presents no evidence, and there is no
evidence showing he is guilty only of a lesser included offense, then a charge
on a lesser included offense is not required. 
See Bignall, 887 S.W.2d at 22‑24.  

Yanez asserts that a
rational jury could have found that, if he was guilty of anything, he was only
guilty of the lesser included offense of manslaughter.  He directs us to testimony he claims
demonstrates he acted recklessly and, thus, raises the issue of involuntary
manslaughter.  Thus, the factual dispute
at the crux of this inquiry is whether Yanez caused the death intentionally or
recklessly. 








When a person
recklessly causes the death of an individual, the offense is manslaughter.  Tex.
Pen. Code Ann. ' 19.04(a) (Vernon
2003).  A person commits the offense of
capital murder if he murders an individual under six years of age.  Tex.
Pen. Code Ann. ' 19.03(a)(8), ' 19.02(b)(1) (Vernon
2005) (stating that a person commits the offense of murder if he intentionally
or knowingly causes the death of an individual).  A person acts recklessly with respect to the
result of his conduct when he is aware of but consciously disregards a
substantial and unjustifiable risk that the result will occur.  See Tex.
Pen. Code Ann. ' 6.03(c) (Vernon
2003).  The risk must be of such a nature
and degree that its disregard constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as
viewed from the actor's standpoint.  Id.  The offense of manslaughter "involves
conscious risk creation, that is, the actor is aware of the risk surrounding
his conduct or the results thereof, but consciously disregards it."  Stadt v. State, No. PD-1937-03, 2005
Tex. Crim. App. LEXIS 2009, at *9 (Tex. Crim. App. Nov. 23, 2005) (quoting Lewis
v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1978)).  

The question before us
is whether there was some evidence presented at Yanez's trial that would permit
a rational jury to find that he possessed the culpable mental state of
manslaughter recklessness rather than the culpable mental state of capital
murder.  We turn to the evidence.








Yanez asserts that the
evidence was disputed as to whether he ever meant to harm Klarissa in any
way.  He contends that Klarissa  was "inadvertently shot" while
Yanez shot Duran and Palomo and, thus, a jury could have found he was only
guilty of manslaughter.  In support of
his theory, Yanez espouses that (1) Palomo's eyewitness testimony was neither
credible nor corroborated, (2) the neighbor's independent eyewitness account of
the shooting was inconsistent and unreliable, (3) forensic evidence was either
unavailable or essentially inconclusive and did not negate recklessness, and
(4) Junior's testimony that he observed Yanez shoot once into the car while all
family members occupied it.  We do not
address the weight and credibility of the defendant's version of events.  Saunders, 840 S.W.2d at 391.  However, we must consider Yanez's proffered
evidence with the remainder of the evidence. 
Rousseau, 855 S.W.2d at 673. 









Evidence showed that
Yanez (1) had an escalating acrimonious relationship with Klarissa's mother
Palomo as to visitation rights involving Klarissa's brother, Junior, (2) Yanez
appeared at Klarissa's residence unannounced, (3) Palomo interrupted Yanez's
visit with Junior so that the family could proceed to visit a relative as
planned, (4) Klarissa's father Duran observed Yanez approaching him as Duran
sat in the driver's seat and unsuspectingly lowered the car window, (5) Yanez
shot Duran in the face, (6) Palomo sustained a bullet wound to her leg while
seated in the front passenger seat, (7) Klarissa sat near the middle of the
back seat of the car, (8) Junior exited the vehicle, (9) Yanez  aimed the gun toward the back seat and fired
twice, (10) the gun was out of ammunition, (11) Palomo pleaded with Yanez not
to hurt Klarissa, (12) Yanez loaded the gun with more bullets, (13) Yanez
approached Palomo, who had exited the vehicle and approached him, and shot her
leg, causing her to fall, (14) Yanez put half his body inside the car, (15)
Yanez shot twice, (16) Klarissa sustained one bullet wound to the left side of
her head and one below her left eye, (17) Klarissa was four years old and
weighed approximately thirty pounds, (18) she had not attended the last day of
school because she was sick, (19) Klarissa died as the result of massive injury
to her head, (20) Duran, Palomo, Junior and Klarissa had been home less than an
hour before the shooting occurred, and (21) of the persons present, Yanez was
the sole person at the scene of the shooting with a loaded gun.  The videotape of the crime scene admitted in
evidence shows that the car had dark tint on the back seat windows.  Testimony showed that Yanez opened the back
door of the car and put half his body inside prior to shooting the child.  

Intent may be inferred
from the actions or conduct of the appellant.  McGee v. State, 774 S.W.2d 229, 234 (Tex.
Crim. App. 1989).[13]  Intent may also be ascertained or inferred
from the means used and the wounds inflicted.  Womble v. State, 618 S.W.2d 59, 64 (Tex.
Crim. App. 1981).  Evidence showed the
discord between Yanez and Palomo over visitation of Yanez with Junior.  Already injured by a bullet, Palomo pleaded
with Yanez that he not hurt Klarissa. 
Yanez's penultimate act was to shoot Palomo in the leg as she had neared
him as he reloaded the gun.  By shooting
her leg, Yanez disabled Palomo, who while pleading he not hurt Klarissa was the
only person who could arguably, albeit remotely, defend the child.  Rather than leave the premises after shooting
the child's parents, Yanez reloaded the gun and shot the child.  Once he disabled Palomo, Yanez partially
entered the car and shot the child. 
Given the number of wounds to the child and the proximity in which they
were inflicted inside a car, a jury could reasonably infer that there was
physical evidence showing an intent to kill. 
See  Womble, 618 S.W.2d at
64.  








We must decide whether
there was some evidence presented at Yanez's trial that would permit a rational
jury to find that he possessed the culpable mental state of recklessness rather
than capital murder.  In other words,
there must be some evidence from which a rational jury could acquit Yanez of
the greater offense while convicting him of the lesser included offense.  Feldman v. State, 71 S.W.3d 738, 751
(Tex. Crim. App. 2002).  In order for a
jury to rationally find Yanez guilty of involuntary manslaughter but not
capital murder, the jury would have to disregard the evidence of such intent.  Further, the jury would also have to
disregard evidence showing that Yanez went to the family's residence
unannounced, armed, and shot three victims seated in their car.  We do not believe a rational jury would
disregard such evidence and consider it not to be probative of Yanez's intent
to murder the child.  After reviewing the
record, we conclude that the evidence Yanez advances, in addition to the other
evidence, could lead a rational jury to conclude Yanez intended to murder the
child.  








Moreover, there is no
evidence in the record that would permit a rational jury to find Yanez guilty
only of manslaughter.  When there is not
enough evidence to raise an issue of reasonable doubt whether the defendant was
acting other than intentionally and knowingly, then no issue on involuntary
manslaughter should be given.  Zepeda
v. State, 797 S.W.2d 258, 265 (Tex. App.BCorpus Christi 1990, pet. ref'd.) (citing Dowden
v. State, 758 S.W.2d 264, 271 (Tex. Crim. App. 1988)).  Established facts did not raise the issue of
voluntary manslaughter.  Yanez's theory
that the child was "inadvertently shot" has no support in this
record.  

Accordingly, we
conclude the second part of the test for determining whether a defendant is
entitled to an instruction on a lesser offense is not satisfied.  See Rousseau, 855 S.W.2d at 672.  There is no evidence that if Yanez is guilty,
he is guilty only of the lesser offense. 
Id.  We further conclude
the trial court did not err when it denied Yanez's request for the jury charge
to include the lesser included offense of manslaughter.  Id.; Zepeda, 797 S.W.2d at
265.  We overrule Yanez's fourth issue. 

VI. CONCLUSION

Having overruled
Yanez's four issues presented, we affirm the judgment.

 

ERRLINDA CASTILLO

Justice

 

Publish.

Tex. R. App. P. 47.2(b).

 

Opinion delivered and filed

this 16th 
day of February, 2006.

 











[1] See Tex. Pen. Code Ann. _19.03 (Vernon Supp. 2005).





[2] Yanez had previously been
convicted of the felony offense of aggravated assault of a peace officer.





[3] Rule 609(a) of the Texas Rules of
Evidence states:

 

 (a) 
General Rule.  For the purpose of
attacking the credibility of a witness, evidence that the witness has been
convicted of a crime shall be admitted if elicited from the witness or
established by public record but only if the crime was a felony or involved
moral turpitude, regardless of punishment, and the court determines that the
probative value of admitting this evidence outweighs its prejudicial effect to
a party.

 

Tex. R.
Evid. 609(a).  





[4] Rule 609(f) of the rules of
evidence states:

 

(f) 
Notice.  Evidence of a conviction is
not admissible if after timely written request by the adverse party specifying
the witness or witnesses, the proponent fails to give to the adverse party
sufficient advance written notice of intent to use such evidence to provide the
adverse party with a fair opportunity to contest the use of such evidence.

Tex. R.
Evid. 609(f).





[5] Texas Rule of Appellate Procedure
33 governs the preservation of appellate complaints. Tex. R. App. P. 33.1. 
To preserve error for appellate review under Rule 33.1(a), the record
must show that the complaining party made a timely and specific request,
objection, or motion, and the trial court expressly or implicitly (1) ruled on
the request, objection, or motion or (2) refused to rule and the complaining
party objected to that refusal.  Id.;
see Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).  





[6] Even if we construed that the
motion is one in limine, which the trial court could have done, a ruling on
such a motion preserves nothing for appellate review.  Gonzales v. State, 685 S.W.2d 47, 50‑51
(Tex. Crim. App.1985) ("Reliance on a motion in limine will not preserve
error; any remedy available with regard to a violation of a motion in limine is
with the trial court.").  A
defendant must object on the proper grounds when the evidence is offered at
trial.  Benavides v. State, 763
S.W.2d 587, 590 (Tex. App.BCorpus Christi 1988, pet. ref'd) (citing Cook v. State,
741 S.W.2d 928, 939 (Tex. Crim. App. 1987); Romo v. State, 577 S.W.2d
251, 252 (Tex. Crim. App. 1979); Witherspoon v. State, 486 S.W.2d 953,
955‑56 (Tex. Crim. App. 1972)).

 

 





[7] We find additional support in
concluding the trial court did not abuse its discretion by its preliminary
ruling.  Theus imposes that, when
the case involves the testimony of only the defendant and the State's
witnesses, the importance of the defendant's credibility and testimony
escalates.  Theus v. State, 845
S.W.2d 874, 881 (Tex. Crim. App. 1992). 
"As the importance of the defendant's credibility escalates, so will
the need to allow the State an opportunity to impeach the defendant's
credibility."  Id. (citation
omitted). 





[8] We consider everything in the
record, including any testimony or physical evidence admitted for the jury's
consideration, the nature of the evidence supporting the verdict, the character
of the error and how it might be considered in connection with other evidence
in the case, the jury instruction given by the trial judge, the State's theory
and any defensive theories, closing arguments, and voir dire if material to
appellant's claim.  Morales v. State,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000). 
We also consider overwhelming evidence of guilt, but that is only one
factor in our harm analysis.  Motilla
v. State, 78 S.W.3d 352, 356‑58 (Tex. Crim. App. 2002).  Further, we are "obligated to examine
the entire record in a neutral, impartial and even‑handed manner and not
'in the light most favorable to the prosecution.'"  Harris v. State, 790 S.W.2d 568, 586
(Tex. Crim. App. 1989) (construing predecessor harmless error rule).  

 





[9] Rule 609(b)states:

 

(b) Time Limit.  Evidence of a conviction under this rule is
not admissible if a period of more than ten years has elapsed since the date of
the conviction or of the release of the witness from confinement imposed for
that conviction, whichever is the later date, unless the court determines, in
the interests of justice, that the probative value of the conviction supported
by specific facts and circumstances substantially outweighs its prejudicial
effect.  

 

Tex. R.
Evid. 609(b).





[10] Duran testified as follows in
pertinent part:

 

Q:  When were you released from confinement from
the penitentiary for these two offenses?            

A: 
I can't even remember.

Q: 
All right.  Was it before October
30, 1988?

A: 
Yeah, it had to have been before 1988.

 





[11] Duran testified he served the
remainder of the prison terms for the first two offenses concurrently with the
most recent offense because his parole was revoked on grounds of his most recent
offense. 





[12] On cross-examination, Palomo
testified as follows:

 

Q: 
And you would agree with me that from May 2002 to May 2003 there was a
great deal of problems regarding visitation; would you agree?

A: 
There was problems, yes.

 

However, on redirect examination, Palomo testified:

 

Q: 
Ms. Palomo, the court order that you had between yourself and your
ex-husband, the Defendant, and [Junior], that court order did not in any way
attribute any visitation or in any way affect Klarissa Danielle Duran, did it?

A:  It had nothing to do with my
daughter.





[13] The jury may infer the requisite
intent from any facts which tend to prove its existence, including the acts,
words, and conduct of the accused, and the method of committing the crime and
from the nature of the wounds inflicted on the victims.  Manrique v. State, 994 S.W.2d 640, 649
(Tex. Crim. App. 1999) (J. Meyers concurring); see Conner v. State, 67
S.W.3d 192, 197 (Tex. Crim. App. 2001). 
If a deadly weapon is used in a deadly manner, the inference is almost
conclusive that the defendant intended to kill. 
Adanandus v. State, 866 S.W.2d 210, 215 (Tex. Crim. App.1993); see
Bell v. State, 501 S.W. 2d 137, 138 (Tex. Crim. App. 1973); Guerrero v.
State, 655 S.W.2d 291, 292 (Tex. App.BCorpus Christi 1983, no pet.).  In fact, where a deadly weapon is fired at
close range and death results, the law presumes an intent to kill.  Womble v. State, 618 S.W.2d 59, 64
(Tex. Crim. App. 1981).