Robert ZEPEDA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–89–183–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1990.

Discretionary Review Refused
Dec. 12, 1990.

Mark Alexander, McAllen, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before BENAVIDES, SEERDEN and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

A jury found Robert Zepeda guilty of murder and sentenced him to twenty-five years in the Texas Department of Corrections. By eight points of error, appellant challenges the admission of certain evidence, the sufficiency of the evidence to support the jury findings, and the trial judge's refusal to include involuntary and voluntary manslaughter in the charge. We affirm the judgment of the trial court.

### I. FACTS

On January 12, 1988, between 10:00 a.m. and 11:30 a.m., Israel Rivera and Jaime Flores were at La Plazita, a park in Weslaco. The two men were standing next to and leaning on a red pickup truck while they talked to each other. The deceased, Juan Jose Marroquin, a friend of Jaime's, came up to them and started talking to Jaime. Appellant and another juvenile, who were both carrying sticks or clubs the size of baseball bats, came from an alley adjacent to the park and approached the three men. Either appellant or the other juvenile stated that Marroquin had messed with his sister and the two juveniles began striking Marroquin with the sticks. According to Rivera, while Marroquin was being struck repeatedly on the back, the head, and the legs, he and Flores moved around the pickup truck to get out of the way. Despite moving, he and Flores were still within five to six paces of the beating.

Rivera stated that Marroquin appeared hurt by the blows and attempted to avoid being struck and climbed on the truck, dripping blood on it. Marroquin told the two attackers not to hurt him anymore. Nevertheless, appellant and the other juvenile continued to strike at appellant, denting the truck. Marroquin then climbed off the truck and was knocked to the ground. Appellant struck him two to three times in the head, with one of these blows making a hollow sound. The other juvenile beat Marroquin below the waist. According to Rivera, when appellant struck Marroquin on the head, the appellant was facing Rivera and he got a good look at appellant. The entire course of the beating lasted from five to ten minutes.

After the beating, the appellant and the other juvenile still carrying their sticks fled down an alley. Marroquin got up, "like he was full of blood and like he didn't know where he was at" and went into another alley and sat down next to a faucet. The police were summoned by a nearby business owner. Marroquin was picked up by an ambulance, transported to a hospital and subsequently died as a result of the head wounds he received from the beating. Marroquin did not identify his attackers before dying.

The beating was also witnessed by Pablo Guevera and Elias Jimenez, who were on the porch of one of the houses across the street from the park. Although both of these men described the choreography of the beating in the same way as Rivera, including the blows to Marroquin's head by only one of the attackers, neither of them was close enough to see the two attackers such that they could identify them. Joe Pena, who lived in the alley down which appellant and the other juvenile fled, identified appellant as one of the juveniles he saw carrying sticks in the alley on the morning shortly after Marroquin was beaten.

Through contact with the businesses close to La Plazita, the police were able to set up a series of leads which led them to appellant. No certain identification of the other juvenile was made.

## II. EVIDENCE

By four points of error, appellant claims that the trial court erred either in allowing the introduction of certain evidence or in failing to suppress certain evidence. We address these points in chronological order.

By his fourth point of error, appellant contends that the trial court erred when it failed to suppress Rivera's identification testimony. From appellant's argument and the pages in the record on which he relies, we presume that he is complaining that the trial court erred when it overruled his pretrial motion to suppress Rivera's identification testimony pursuant to the photographic identification. Appellant complains that the identification procedures were sugges-

tive and that the reliability of the eye-witness identification became questionable. Appellant's chief complaint is that the officer who presented the photo display to Rivera asked him to look at the display to see if he could identify the person who had beaten Marroquin.

A photographic display must be "impermissibly suggestive" and "give rise to a substantial likelihood of misidentification" in order to invalidate an in-court identification. *Garcia v. State*, 626 S.W.2d 46, 53–53 (Tex.Crim.App.1981); *Turner v. State*, 614 S.W.2d 144, 145–46 (Tex.Crim.App. 1981). This determination depends upon the totality of the circumstances. *Jackson v. State*, 657 S.W.2d 123, 128 (Tex.Crim. App.1983).

■ Nine days after the beating, Rivera reviewed a photo spread and identified appellant. Appellant contends that the officer who presented the photographs to Rivera was suggestive when he specifically asked Rivera if he could identify the person who had beaten Marroquin. The officer, however, did not suggest an answer, nor did he point out a specific person or try to get Rivera to identify appellant or anyone else as being one of the suspects in this case. We find that this pretrial photographic identification was not suggestive.

■ Even if this display had been "impermissibly suggestive," we note that the in-court identification would have been admissible. A photographic identification does not automatically taint an in-court identification. *Garcia*, 626 S.W.2d at 54; *Lacey v. State*, 653 S.W.2d 528, 529 (Tex. App.—Corpus Christi 1983, pet. ref'd). A witness' in-court identification which is independent of any pre-trial identification procedures is admissible. *Jackson*, 657 S.W.2d at 130; *Garcia*, 626 S.W.2d at 54; *Turner*, 614 S.W.2d at 146; *Lacey*, 653 S.W.2d at 529. Rivera had known appellant for over a year before the beating. He also explained that he had watched appellant strike Marroquin for ten minutes from a distance of five to six paces and that the crime had taken place at around 10:00 in the morning. Rivera stated that

the photographic identification was based on the fact that appellant was the same person that Rivera had seen in the park. Considering the totality of the circumstances, we overrule appellant's fourth point of error.

By his fifth and sixth points of error, appellant contends that the trial court erred when it allowed into evidence inflammatory photographs, including autopsy photographs. Appellant's main contention is that the photographs were gruesome and inflammatory and were not relevant to any issue.

At trial, the State introduced over thirty photographs. Appellant objected to nine of these photographs, all of which were of Marroquin or his wounds. One photograph showed a bloody Marroquin being assisted by a paramedic, while the rest of the photographs were close-ups of either Marroquin's head or his back. Some of these photographs were taken during the autopsy process and showed shaved and sutured areas of Marroquin's head.

The admission in evidence of photographs is within the discretion of the trial court, which determines whether they serve a proper purpose in the enlightenment of the jury. *Burdine v. State*, 719 S.W.2d 309, 316 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1986). Testimony concerning the scene of a murder, including a description of the victim, is admissible to throw light on the transaction and reveal its general nature; if a verbal description of the scene is admissible, then a photograph depicting the same is admissible. *Burdine*, 719 S.W.2d at 316; *Hawkins v. State*, 660 S.W.2d 65, 79 (Tex.Crim.App.1983); *Reimer v. State*, 657 S.W.2d 894, 896 (Tex.App. —Corpus Christi 1983, no pet.). When photographs are cumulative of other evidence, they are admissible except if they are offered solely to inflame the jury, or if their prejudicial effect outweighs their probative value. *See Green v. State*, 682 S.W.2d 271, 292 (Tex.Crim.App.1984).

A relevant photograph is not rendered inadmissible merely because it is gruesome or might tend to arouse the jury's passions.

*Purtell v. State*, 761 S.W.2d 360, 371 (Tex. Crim.App.1988); *Martin v. State*, 475 S.W.2d 265, 267 (Tex.Crim.App.1972); *Guzman v. State*, 649 S.W.2d 77, 80 (Tex.App. —Corpus Christi 1982, no pet.). In murder cases, detailed photographs, some of which are enlargements and closeups, which depict a bloody, mutilated, partially clothed body are relevant to the cause of death and are probative evidence of the killer's culpable mental state. *Reimer*, 657 S.W.2d at 898; *see also Montelongo v. State*, 644 S.W.2d 710, 713–14 (Tex.Crim.App.1980). Similarly, photographs related to the autopsy are admissible where they are used to illustrate and clarify a medical expert's description of the injuries, and reveal the cause of death. *Izaguirre v. State*, 695 S.W.2d 224, 226 (Tex.App.—Corpus Christi 1985, no pet.); *see also Terry v. State*, 491 S.W.2d 161 (Tex.Crim.App.1973).

Because the photographs were relevant to intent and the manner of Marroquin's death and we do not find that their prejudicial or inflammatory effect outweighs their probative value, or that they were solely to inflame the jury, we find that the trial court did not abuse its discretion in admitting the photographs. We overrule appellant's fifth and sixth points of error.

By his first point of error, appellant contends that the trial court erred when it allowed the State to introduce the previous testimony of Jaime Flores. Appellant claims that the proceedings during which the transcript were made, a civil certification hearing, were different from the trial and were not similar enough to justify the admission and that would prejudice him. He also claims that the admission violated his right to cross-examination and that the prejudicial effect of the evidence outweighed its probative value.

Near the end of trial, the State indicated that it was unable to locate Flores to bring him to testify, and it moved to present a transcript of his prior testimony into evidence. Appellant objected on the same grounds he raises on appeal. He claims that the transcript was not admissible under Tex.R.Crim.Evid. 804(b)(1).

Tex.R.Crim.Evid. 804(b)(1) states:

**(b) Hearsay exceptions.** The following are not excluded if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

As pointed out by both parties, there are no opinions from Texas state courts directly on point interpreting this rule. Nevertheless, Texas case law does provide us with some guidance. When the issue for which the prior testimony is offered was thoroughly covered at the prior hearing through direct and cross-examination, the testimony is admissible. *See generally McMurrey v. State*, 168 S.W.2d 858, 861 (Tex.Crim.App.1943); *Serna v. State*, 7 S.W.2d 543, 545–46 (Tex.Crim.App.1928).

In principle, this case is not unlike *McMurrey* and *Serna*. In *McMurrey*, testimony given by a doctor regarding a defendant's sanity at that defendant's sanity hearing was properly admitted in the defendant's murder trial. *See McMurrey*, 168 S.W.2d at 861. There was no violation of the defendant's right to confrontation since the defendant's trial attorney had cross-examined the doctor fully with reference to the issue of the defendant's sanity at the sanity hearing. *See id.*

Similarly, in *Serna*, testimony given by a witness at an examining hearing that the deceased had been shot in the back and that the bullet had come out about an inch under the right nipple was properly admitted at defendant's murder trial. *See Serna*, 7 S.W.2d at 545–47. The witness in question was called by the State and "appellant not only had the privilege of cross-examining him, but availed himself of it through his attorney." *Serna*, 7 S.W.2d at 545. The defendant did not complain that his right to confrontation had been violated; he complained that the witness was not qualified to give the testimony that the deceased had been shot in the back and that the bullet had exited just below his right nipple. *See id.* The court noted that

from the witness's testimony as a whole, there was no basis for that complaint. *See id.*

In this case, although appellant complains that the prior hearing is not similar enough to the trial, at issue in both the certification hearing and at trial was whether appellant was the individual who beat Marroquin. The prior testimony was offered by the State for the purpose of showing that Flores "did make a positive identification in front of the [appellant] and his own defense attorney." A review of the testimony shows that Flores was questioned by the State regarding his identification of appellant and whether appellant was the individual who hit Marroquin in the head. The transcript further shows that appellant's attorney thoroughly cross-examined Flores with regard to his identification of appellant.

At trial, appellant's attorney argued that without Flores' presence he would be unable to question Flores regarding a line of questioning which had been developed during trial, that is, which of the two juveniles had made a statement regarding a sister. We note that the State did not present Flores' testimony with regard to this issue nor was it an issue during the certification hearing. Questioning of Flores at the certification hearing was restricted to whether appellant was one of the juveniles who beat Marroquin and whether appellant was the individual who beat Marroquin on the head.

Therefore, the prior testimony which was admitted at trial concerned only one issue and appellant had the opportunity to cross examine Flores regarding that issue. Hence, his right to confront Flores was not violated. The line of questioning which was restricted at the certification hearing and which was developed through other witnesses at trial related to a defensive issue, and it was, therefore, incumbent upon appellant to present Flores as his witness. We overrule appellant's first point of error.

■ By his eighth point of error, appellant contends that the trial court erred when it did not require the State's witness to disclose the name of the informant.

During appellant's cross examination of Officer Gamez, Gamez revealed that an informant had told him that another person had been bragging about murdering Marroquin. Appellant asked who the informant was, and the State objected. After some discussion at the bench, during which the trial court did not rule on the objection, appellant's attorney proceeded with his questioning. He did not ask Gamez who the informant was during this continued questioning or at any other subsequent time nor did he ask anyone else who the informant was. At no time did appellant request that the trial court require Gamez to disclose the name of the informant. Accordingly, we overrule appellant's eighth point of error.

## III. SUFFICIENCY OF THE EVIDENCE

■ By his seventh point of error, appellant contends that the evidence is insufficient to support his conviction because the State failed to prove the necessary intent and the proper manner and means. Appellant argues that there was no evidence showing that appellant intended to seriously injure Marroquin or to show that he clearly understood that he did an act dangerous to human life. Appellant also argues that there is reasonable doubt as to what caused Marroquin's death: no weapon was ever recovered, and eyewitness testimony was conflicting whether the weapon was a club, bat, stick or pickax handle. He contends that the evidence is insufficient under the allegations in the indictment that the means of death were either a piece of wood, a stick, or a wooden handle.

In reviewing the sufficiency of the evidence to sustain the conviction, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989).

With regard to the lack of evidence showing his intent, appellant argues that the evidence shows that he left Marroquin alive and conscious. He also states that there was no evidence isolating his blows. Contrary to appellant's assertions, however, the eyewitness' testimony was that appellant approached Marroquin and began to beat him repeatedly and brutally. The eyewitnesses also testified that appellant continued to beat Marroquin after he began to bleed and after Marroquin told his attackers that they were hurting him. Further testimony was that after Marroquin fell to the ground, appellant hit him two to three times in the head with such force that one of the witnesses described the blow as having a hollow sound. We find that the evidence is both sufficient to establish that appellant intentionally or knowingly caused Marroquin's death, and that he intentionally or knowingly committed an act clearly dangerous to human life.

■ With regard to the lack of evidence to establish the proof of manner and means, appellant argues that while the pathologist testified that the murder weapon was a deadly weapon, no one testified that a piece of wood, stick, or wooden handle is deadly. The pathologist testified, however, that Marroquin's head injuries, which resulted in his death, were caused by close blows from a blunt, cylindrical object, such as a pipe or baseball bat. He further testified that such an object would be capable of causing death. Rivera described the weapons as clubs or sticks which were something like a bat; Guevera referred to the weapons as wooden sticks; and, Flores referred to the weapons as sticks and something like a pick handle. Further, a deadly weapon is defined as including anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(11)(B) (Vernon 1974). We find that the evidence is sufficient to establish that Marroquin died as a result of blows to his head caused by deadly weapon, either a piece of wood, a stick or a wooden handle. Appellant's seventh point of error is overruled.

## IV. JURY CHARGE

By his second and third points of error respectively, appellant contends that the

trial court erred in refusing his requests to include involuntary and voluntary manslaughter in the jury charge. For a charge on a lesser included offense to be required, two criteria must be met. *See Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981). First, the lesser included offense must be included within the proof necessary to establish the offense charged. *Id.* Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Id.* If the evidence from any source raises the issue of a lesser included offense, it must be included in the jury charge. *Sanchez v. State*, 745 S.W.2d 353, 357 (Tex.Crim.App. 1988).

Involuntary manslaughter occurs when a person recklessly causes the death of another. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984); Tex. Penal Code Ann. § 19.05(a)(1) (Vernon 1989). A person acts with recklessness when he or she is aware of, but consciously disregards, a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Lugo*, 667 S.W.2d at 147. When there is not enough evidence to raise an issue of reasonable doubt whether appellant was acting other than intentionally and knowingly, then no issue on involuntary manslaughter should be given. *See Dowden v. State*, 758 S.W.2d 264, 271 (Tex.Crim.App. 1988). In other words, when no evidence shows that appellant was guilty *only* of the lesser included offense of involuntary manslaughter, then a jury instruction on involuntary manslaughter should not be given. *See Dowden*, 758 S.W.2d at 272.

▪ Appellant argues that the jury could reasonably believe that appellant did not have the specific intent to kill, but was reckless in causing the death of the victim. He states that the evidence shows that he only hit Marroquin two to three times in the head and that Marroquin was conscious and walked away. A full reading of the evidence, however, shows that appellant specifically approached Marroquin with a large stick and repeatedly and deliberately beat Marroquin for approximately ten minutes, until he was bleeding and on the

ground. Further, after appellant and the other juvenile finished beating Marroquin, they ran from the bloody scene. Marroquin was able to get up and walk from the scene of the beating, but was bent over and dizzy, and Marroquin was merely semi-conscious at the time the ambulance arrived. There was no evidence that appellant did not intend to beat Marroquin or that the beating was accidental. The State showed that appellant voluntarily went to the park and intentionally engaged in a beating that resulted in Marroquin's death. Since no evidence shows that appellant's conduct was merely reckless, we overrule his second point of error.

A charge on voluntary manslaughter should only be given when there is evidence that the defendant acted under the "immediate influence of sudden passion arising from an adequate cause." *Marras v. State*, 741 S.W.2d 395, 405 (Tex.Crim. App.1987); *Marquez v. State*, 725 S.W.2d 217, 223–24 (Tex.Crim.App.1987). The term "sudden passion" is defined by Tex. Penal Code Ann. § 19.04(b) (Vernon 1989) as:

passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises *at the time of the offense* and is not solely the result of former provocation. (emphasis ours).

"Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex.Penal Code Ann. § 19.04(c) (Vernon 1989).

▪ In determining whether the evidence was sufficient to warrant a jury charge on voluntary manslaughter, an appellate court will consider whether evidence from any source raised the issue. *Marquez*, 725 S.W.2d at 223. We inquire whether there is any evidence, however weak, contested or incredible, that the accused acted under the immediate influence of sudden passion arising from an adequate cause. *Gold v. State*, 736 S.W.2d 685, 688 (Tex.Crim.App.1987). Prior provocation alone is insufficient to raise voluntary man-

slaughter. *Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Crim.App.1983).

Appellant argues that the facts show a person acting in a rage which was caused by Marroquin's threat to a young lady, specifically, striking her with a beer bottle. According to the evidence, however, this event with the bottle occurred some time prior to the beating, indicating that the attack on Marroquin was premeditated and did not occur as a result of sudden passion arising from an adequate cause. The facts did not raise the issue of voluntary manslaughter, and we find that the trial court did not err in refusing to include voluntary manslaughter in the jury charge. Appellant's third point of error is overruled.

The judgment of the trial court is AFFIRMED.