tasby 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-92-447-CR





CHAKA LOUIS TASBY,



 
 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0922159, HONORABLE BOB JONES, JUDGE PRESIDING 



 





 Chaka Louis Tasby ("Tasby") was convicted for the offense of retaliation. Tex.
Penal Code Ann. § 36.06(a) (West Supp. 1993). (1) After finding that Tasby used a deadly weapon,
the jury assessed an enhanced punishment of 11 years confinement and a $4,000 fine. Tasby
appeals, challenging the legal sufficiency of the evidence supporting his conviction and arguing
that the trial court erred by denying his motion to suppress identification. We will affirm the
conviction.



BACKGROUND


 Viewed in the light most favorable to the verdict, the evidence established the
following events. On April 28, 1991, Calvin Britton reported to the police that he had been shot
in the leg by Elvin Tasby, Chaka Tasby's cousin, and that Chaka Tasby was also involved in the
shooting. Both Chaka and Elvin Tasby were arrested for aggravated assault. Chaka Tasby
remained in jail until October 25, 1991. As a result of the shooting, Britton and his family moved
to a new neighborhood and told no one their new address.

 On November 27, 1991, Britton and his friend Gilbert Price, along with Britton's
sisters, brother, and other friends, were playing in the yard of his home while his mother was
preparing Thanksgiving dinner. In the late afternoon, a car slowly drove by Britton's home,
turned around, and then drove up to the house again. At that point, Price recognized the
passenger in the car as Chaka Tasby and yelled to Britton, "Chief, get out of Dodge!" Britton
started running toward the gate of the house. As he jumped over the gate, he looked back and
recognized Tasby as the passenger and Stephen Ockletree as the driver. The car stopped near the
gate. Britton fell to the ground, and part of the gate fell on top of him when one of his other
friends also jumped the gate.

 Britton lay on his side under the gate, facing the car. His house rested on a hill that
slanted down to the street where the car had stopped about thirty feet away from him. Britton
looked down and saw Tasby in the passenger seat staring at him. He saw Tasby hold an automatic
pistol up in the air and attempt to load the clip. He could hear Ockletree, who was leaning back
in the driver's seat, shout, "Get him. Get him. Shoot him." Price heard Tasby say, "I can't get
the clip in." While Tasby fumbled with the gun, Britton quickly pushed the gate off of himself,
jumped up, ran to the back door of the house and then into the living room.

 When Britton's mother found out what was happening, she ran to the front door and called
out for her neighbors to get the license plate number. The neighbors got the license number and
the car drove off. Mrs. Britton called the police, to whom Britton explained what had happened. 
Around 10:00 p.m. that evening, Britton saw the same car parked in front of his house with its
lights shining toward the front room. Britton's grandmother called the police. Tasby was arrested
for the offense of retaliation on December 10, 1991.



DISCUSSION


 In his first point of error, Tasby challenges the legal sufficiency of the evidence
supporting his conviction. Tasby argues that the State failed to prove beyond a reasonable doubt
that he intended to threaten Britton in retaliation for Britton's earlier report to the police about the
shooting incident on April 28, 1991.

 We measure the sufficiency of the evidence against the court's charge. Boozer v.
State, 717 S.W.2d 608, 610 (Tex. Crim. App. 1984). The relevant portion of the charge
instructed the jury to find appellant guilty if they believed from the evidence beyond a reasonable
doubt,



that . . . Chaka Louis Tasby . . . on or about the 27th day of November, 1991 .
. . did then and there intentionally or knowingly threaten to harm Calvin Britton
by an unlawful act, to wit: carrying on or about his person a handgun and
exhibiting it to the said Calvin Britton in retaliation for or on account of the
service of the said Calvin Britton as a witness or a prospective witness or as a
person who has reported the occurrence of a crime and during the commission of
said offense . . . the said Chaka Louis Tasby did use or exhibit a deadly weapon,
to wit: a firearm[.]



(emphasis added). Tasby contends that the State failed to prove a retaliatory intent, that he
intended his acts in retaliation for Britton's earlier report to the police, and that Britton was his
"intended target." He contends that the State's evidence is purely circumstantial and does not
exclude other possible motives or reasons for his actions. He complains that the circumstantial
evidence does not explain why Britton was shot in the leg in April, nor does it show that Chaka
Tasby was ever charged for the aggravated assault stemming from Britton's report to the police. 
Tasby ultimately concludes that because the circumstantial evidence does not exclude every
reasonable hypothesis save his guilt, his conviction must be set aside. We disagree.

 Circumstantial evidence need not exclude every reasonable hypothesis other than
the defendant's guilt. Geesa v. State, 820 S.W.2d 154, 155 (Tex. Crim. App. 1991). In Geesa,
the Court of Criminal Appeals specifically rejected this analytical construct in reviewing
circumstantial evidence for cases tried thereafter. Id. at 165. For a legal sufficiency challenge,
we review direct and circumstantial evidence under the same standard. We must view all the
evidence in the light most favorable to the prosecution, and decide whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318-19 (1979); see Geesa, 820 S.W.2d at 156-69.

 Because of its intangible nature, a person's intent generally must be inferred from
the circumstances under which a prohibited act or omission occurs. See Hernandez v. State, 819
S.W.2d 806, 809-810 (Tex. Crim. App. 1991), cert. denied, 112 S. Ct. 2944 (1992); Dillon v.
State, 574 S.W.2d 92, 94-95 (Tex. Crim. App. 1978). The record reveals circumstances
evidencing Tasby's intent to threaten Britton in retaliation for reporting a crime. Britton reported
to the police that he was the victim of a shooting on April 28, 1991, and that Chaka and Elvin
Tasby were involved in that shooting. The police arrested Elvin and Chaka Tasby for aggravated
assault as a result of this report. Regardless of whether he was ever charged for aggravated
assault, Chaka Tasby remained incarcerated for almost six months after this arrest. Out of fear,
Britton and his family moved to a new neighborhood and gave no one their new address. From
these circumstances, a jury could reasonably infer that Chaka Tasby had a motive to retaliate for
Britton's report to the police.

 Moreover, the record provides sufficient evidence that Tasby's actions were
directed toward Britton. The car followed Britton and stopped near the gate where he had fallen. 
Britton saw Tasby looking directly at him from the car as Tasby loaded the clip in an automatic
pistol. Britton testified that he could see the gun because Tasby was holding it up in the air. 
Britton heard Ockletree yell, "Get Him. Get Him. Shoot him," while Tasby looked at him. We
conclude that a rational trier of fact could find all the essential elements of retaliation. We
overrule Tasby's first point of error.

 In his second point of error, Tasby argues that the trial court erred by denying his
motion to suppress identification. In his motion to suppress, Tasby challenged Britton's
identification of him to the police. From a collection of six photographs, Britton identified Tasby
as the person who threatened him. Tasby contends that this photographic identification procedure
was impermissibly suggestive because Sergeant Zahara allegedly told Britton to "pick out Chaka
Tasby." He concludes that this procedure was so suggestive that it tainted Britton's identification
of Tasby at trial.

 In reviewing a trial court's ruling on a motion to suppress evidence, we will not
reverse the decision absent a clear showing that the trial court abused its discretion. State v.
Comeaux, 786 S.W.2d 480, 482 (Tex. App.--Austin 1990), aff'd, 818 S.W.2d 46 (Tex. Crim.
App. 1991) (citations omitted). The evidence in the record reveals that the trial court did not
exceed this broad discretion.

 As the State notes in its brief, it is unclear from the record whether Zahara actually
told Britton to "pick out Chaka Tasby" or merely asked him to identify the person who threatened
him. However, even if Zahara made this statement, we conclude that Tasby did not meet the
requisite burden of proof. Tasby had to show by clear and convincing evidence that, under the
totality of the circumstances, the in-court identification was so tainted by a suggestive
photographic procedure that there existed a substantial likelihood of irreparable misidentification. 
Madden v. State, 799 S.W.2d 683, 695 (Tex. Crim. App. 1990), cert. denied, 111 S.Ct. 1432
(1991); Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).

 From the evidence, the trial court could reasonably conclude that the photographic
procedure was neither suggestive nor capable of giving rise to a substantial likelihood of
irreparable misidentification. The record reveals that Zahara left the room when Britton was
looking over the pictures, and that no officer ever pointed out Chaka Tasby's picture to Britton. 
In addition, Britton told the police before viewing the photographs that Chaka Tasby was the
person who threatened him. Under these facts, Zahara's alleged statement does not appear unduly
suggestive. See Harris v. State, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992), cert. denied, 113
S.Ct. 381 (1992) (lineup not unnecessarily suggestive simply because complainant was told that
lineup contained suspect); and Zepeda v. State, 797 S.W.2d 258, 260 (Tex. App.--Corpus Christi
1990, pet. ref'd).

 Moreover, Britton's in-court identification was independent of the pretrial
photographic procedures and therefore immune from any possible suggestion in Zahara's
statement. Even if a pretrial procedure is impermissibly suggestive, an in-court identification
remains admissible as long as the record clearly shows that the witness' prior observation of the
accused was sufficient to constitute an independent source for the identification at trial. Jackson
v. State, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983) (citations omitted). The record reveals
that Britton knew Tasby by name and appearance about a week before the April shooting and had
reported Tasby's involvement in that shooting. Britton's familiarity with Tasby long before the
photographic identification demonstrates that his in-court identification was based not on the
photograph, but on his previous encounters with Tasby in April and at the crime scene.

 Even if Zahara's statement were suggestive, Britton's in-court identification
remains reliable and incapable of giving rise to a substantial likelihood of irreparable
misidentification. Five factors are to be considered when analyzing the reliability of an in-court
identification: (1) the witness' opportunity to view the criminal at the time of the crime, (2) his
degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of
certainty demonstrated by the witness at the confrontation, and (5) the length of time between the
crime and confrontation. Delk, 855 S.W.2d at 706; Webb v. State, 760 S.W.2d 263, 269 (Tex.
Crim. App. 1988), cert. denied, 109 S.Ct. 3202 (1989) (citation omitted). These factors must
outweigh any possible corrupting effect of the identification procedure. Delk, 855 S.W.2d at 706.

 The State argues that these factors weigh in favor of the reliability of Britton's in-court identification. We agree. The offense occurred during the daytime, and Britton's testimony
indicated that he had an unobstructed view of Tasby from his point on the hill. He witnessed the
events with attention to detail, describing the type of weapon used and the distance between the
car and where he lay on the ground. He could see Tasby staring directly at him and he watched
Tasby load a semi-automatic pistol. Moreover, Britton had already given positive descriptions
of Tasby when he reported the April shooting, and he did not hesitate in identifying him at trial,
approximately six months after the offense occurred. He reported Tasby to the police the day of
the offense and identified Tasby's photograph within a couple of days afterward. Finally, Britton
stated at the pre-trial hearing that his identification was not based on the photo, but on what he
saw take place at his home. We conclude that under the totality of the circumstances, Tasby did
not show by clear and convincing evidence a substantial likelihood of irreparable misidentification. 
We overrule Tasby's second point of error. Accordingly, we affirm the conviction.



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith


Affirmed


Filed: October 27, 1993


Do Not Publish

1.   Section 36.06(a) of the Texas Penal Code reads:


A person commits an offense if he intentionally or knowingly harms or
threatens to harm another by an unlawful act in retaliation for or on account
of the service of another as a public servant, witness, prospective witness,
informant, or a person who has reported the occurrence of a crime.