NUMBER 13-05-430-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ROSENDO DE LEON, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 139th District Court of Hidalgo County, Texas.

 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yanez and Vela


Memorandum Opinion by Chief Justice Valdez



 A jury convicted appellant Rosendo De Leon of the murder of Olga Lydia Garcia and
assessed punishment at seventy-five years' confinement in the Institutional Division of the
Texas Department of Criminal Justice. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). 
In a single issue, De Leon contends that the trial court erred in denying his request to
charge the jury on the lesser-included offense of manslaughter at the guilt/innocence
phase of the trial. We affirm.

I. BACKGROUND

 On December 28, 2003, Pharr police found nineteen-year-old Olga Lydia Garcia
dead from severe blunt trauma to her head and multiple stab wounds. Her body had been
buried in an orchard located in Donna, Texas. Appellant, Olga's boyfriend, was charged
and convicted with Olga's murder. (1) See id. The jury assessed appellant's punishment at
seventy-five years' confinement in the Institutional Division of the Texas Department of
Criminal Justice. 

II. LESSER INCLUDED OFFENSE

 In his sole point of error, appellant contends that the trial court erred in refusing his
request to include the lesser-included offense of manslaughter in the jury charge at the
guilt stage of the trial. The State contends that there is no evidence in the record to
support a manslaughter charge. We agree. 

A. Scope and Standard of Review

 We review a trial court's refusal to include a lesser-included offense in the jury
charge to see if there is some evidence establishing the lesser-included offense. See
Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1992). Anything more than a
scintilla of evidence is sufficient to entitle a defendant to a lesser charge. Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998) (citing Bignall v. State, 887 S.W.2d 21, 23
(Tex. Crim. App. 1994)). We review all the evidence presented at trial to determine if the
trial court erred by failing to give a charge on a lesser-included offense. Rousseau, 855
S.W.2d at 673. When reviewing whether a trial court erred by refusing to include an
instruction on a lesser-included offense in the jury charge, we do not address the weight
and credibility of the defendant's version of events. See Saunders v. State, 840 S.W.2d
390, 391 (Tex. Crim. App. 1992). 

B. Applicable Law

 Article 37.09 of the Texas Code of Criminal Procedure provides, among other
things, that an offense is a lesser-included offense if (1) it is established by proof of the
same or less than all the facts required to establish the commission of the offense charged,
or (2) it differs from the offense charged only in the respect that a less culpable mental
state suffices to establish its commission. Tex. Code. Crim. Proc. Ann. art. 37.09, §§ (1),
(4) (Vernon 2006). The test for submission of a jury charge requires that (1) the lesser-
included offense must be included within the proof necessary to establish the offense
charged; and (2) some evidence must exist in the record that if the defendant is guilty, he
is guilty only of the lesser offense, or, in other words, the defendant is not guilty of the
greater offense but is guilty of the lesser. Pickens v. State, 165 S.W.3d 675, 679 (Tex.
Crim. App. 2005) (citing Hampton v. State, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003);
Rousseau, 855 S.W.2d at 672). 

 Appellant was charged with murder under section 19.02(b)(1) of the penal code,
which provides that "[a] person commits an offense if he  intentionally or knowingly
causes the death of an individual." Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). 
Appellant asked that the jury be given an instruction on manslaughter under section 19.04
of the penal code, which provides that "[a] person commits an offense if he recklessly
causes the death of an individual." Id. § 19.04(a). A person acts recklessly when he is
aware of but consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. Id. § 6.03. The State concedes that manslaughter is a lesser-included offense of the offense
of murder. Cardenas v. State, 30 S.W.3d 384, 392-93 (Tex. Crim. App. 2000); Yanez v.
State, 187 S.W.3d 724, 740-41 (Tex. App.-Corpus Christi 2006, pet. ref'd). Thus, we must
determine only whether the record contains some evidence that would permit a jury to
rationally find that appellant is guilty only of the lesser-included offense of manslaughter.
Rousseau, 855 S.W.2d at 672-73; Yanez, 187 S.W.3d at 741. The crux of this inquiry is
whether appellant caused the death intentionally or recklessly. Yanez, 187 S.W.3d at 741.

C. The Evidence

 During the early morning hours of December 19, 2003, appellant received a phone
call from Olga requesting that he pick her up at her place of work, located a few blocks
from the Wal-Mart where appellant was employed. Appellant agreed. 

1. Anna Maria Garcia

 Anna Maria Garcia, mother of Olga Lydia Garcia, testified that on December 21,
2003, two days after Olga went missing, she filed a missing person's report with the
Weslaco Police Department. She further testified that a friend of Olga's took her to
appellant's home and they confronted him as to Olga's whereabouts. Appellant denied
ever seeing Olga. 

2. Ana Pequeno

 Ana Pequeno, Olga's sister, testified that about two months before Olga went
missing, Olga told her that she was pregnant with appellant's baby. Ana also testified that
she too questioned appellant as to Olga's whereabouts and he told her that he had not
seen or heard from Olga. 

3. William Johnson

 William Johnson, an investigator with the Weslaco Police Department, testified that
he became involved with Olga's disappearance on December 23, 2003. Officer Johnson
stated that he first went to appellant's home and asked him if he had seen Olga. Appellant
again denied ever seeing Olga and mentioned that on the night in question, he was
working at the Wal-Mart located in Pharr, Texas. Officer Johnson further stated that as he
was questioning appellant, he noticed that appellant was nursing a cut on his right hand,
and when questioned about the cut, appellant told Officer Johnson that he had cut himself
at work with a box cutter while trying to open a box. Johnson also testified that he sought
assistance from the Pharr Police Department on December 24, 2003 because Olga was
last seen in Pharr and consequently, the case was in the City of Pharr's jurisdiction. Officer
Johnson, however, assisted in the investigation through its entirety. 

4. Officers Jose M. Soto/Juan Miguel Garza

 Officers Soto and Garza, investigators with the Pharr Police Department, testified
about the progression of the case and the statements made by appellant. 

a. Statement #1

 Officer Soto testified that on December 26, 2003, he went to Wal-Mart and asked
appellant if he was willing to speak to him at the police station. Appellant agreed. At the
station, Officer Soto first read appellant his rights and had appellant initial the form
indicating such. Officer Soto testified that appellant initially denied ever seeing Olga or
picking her up. However, after Officer Soto informed appellant that they had obtained a
video from Wal-Mart that showed appellant leaving Wal-Mart and then arriving back later
with something in his hand, appellant subsequently admitted to picking Olga up from work
and giving her a ride home in the early morning hours of December 19, 2003. According
to Soto, appellant claimed that on the way home, the two got into a heated argument that
forced appellant to pull over by a Circle K in San Juan, Texas. The two continued to argue
and, at one point, appellant grabbed Olga's purse and threw it into a small ditch. Appellant
claimed that he eventually left Olga at Circle K and went back to work. After appellant
made this statement, he was subsequently released. 

b. Statement #2 

 On December 27, 2003, Officers Soto and Garza went back to appellant's residence
and asked him to come back to the police department. Appellant again agreed. At the
station, Officer Soto again read appellant his Miranda rights and appellant initialed the form
indicating such. Appellant subsequently gave a written statement that was typed out by
Officer Soto and introduced as evidence in the State's case-in-chief. In his statement,
appellant again admitted to getting into a heated argument with Olga that forced him to
stop his vehicle somewhere between a Circle K and a funeral home located in San Juan,
Texas. Appellant admitted to getting extremely upset at Olga after she allegedly called him
an asshole. Appellant admitted to hitting Olga several times in the face with both fists and
knocking her unconscious. Appellant further admitted to the possibility of running Olga
over with his vehicle when he drove off. Appellant claimed that he then returned to work
and had not seen Olga since. After giving this statement, appellant was arrested for the
murder of Olga Lydia Garcia. 

c. Statement #3 

 On December 28, 2003, Officer Soto again interviewed appellant. After his rights
were read to him, appellant provided yet another statement that was typed by Officer Soto
and introduced as evidence in the State's case-in-chief. In his third statement, appellant
first admitted to stopping along the frontage road in San Juan, Texas. Appellant added,
however, that after forcing Olga back into his vehicle, he proceeded to drive her home but,
at her request, they arrived at a hunting spot frequented by appellant instead. At the
hunting spot, appellant admitted to becoming very angry at Olga after she taunted him
regarding his masculinity after he refused to have sex with her. Appellant stated that after
Olga allegedly slapped him, he lost all control. Appellant admitted to grabbing Olga by her
blouse and hitting her face with a flashlight. Once Olga fell to the ground, appellant
admitted to taking out a knife from his pocket and stabbing her. In the process, appellant
cut himself and began bleeding. 

 Appellant next admitted to dragging Olga's body towards an orchard in order to
conceal her body. Appellant stated that he got in his vehicle to leave, but stopped because
Olga's body was still visible. Appellant admitted to finding a hole and dragging Olga's body
to the hole by her feet. Appellant stated that he put a small amount of dirt over her and
then left in his vehicle. The next morning, after appellant heard his mother leave to take
his nephew to school, appellant grabbed a shovel from the side of his house, ran to where
Olga's body was located, and shoveled dirt to cover her up. Appellant finally drew a map
for the officers to show the location of Olga's body. 

5. Dr. Fulgencio Salinas 

 Dr. Fulgencio Salinas, a pathologist, performed the autopsy. Dr. Salinas testified 
that he immediately noticed the blunt trauma injuries to the head and multiple stab cuts
through different parts of the body. Dr. Salinas found twenty-six main stab wounds and
three defensive stab wounds on Olga's body. Dr. Salinas further testified that the
extensive depressed fracture to Olga's head indicated that greater force was used to cause
that type of fracture. Dr. Salinas testified that any type of object such as a bat, pipe, or
flashlight could have caused that type of fracture. Dr. Salinas concluded that death was
caused by: (1) blunt trauma to the forehead causing extensive fractures to the bones of the
base of the skull, (2) extensive injury to the brain with brain hemorrhage; (3) extensive
fractures to the bones of the face, and (4) multiple stab wounds to different parts of the
body, causing injury to the right and left lungs, and to the kidney, causing severe
hemorrhage and injury. (2)

D. Analysis

 Appellant contends that his statements establish that he and Olga were in a heated
argument about their relationship; that, during the course of the argument, Olga made
condescending remarks to him and accused him of infidelity which caused him to be
enraged. Appellant asserts that while he recalls striking Olga with his fists, stabbing her
with the knife, and driving over her with his vehicle, he fully understood and appreciated
his circumstances, actions, and the risk of causing Olga serious injury or death, and that
he consciously disregarded the risk. In support, appellant cites to his statement, in which
he stated that "[h]e believed, in his own mind, that he had not committed a crime; rather,
it was an incident that was entirely accidental." Based on this evidence, appellant argues
he is entitled to an instruction on the lesser-included offense of manslaughter
recklessness. We disagree. 

 Intent may be inferred from the actions or conduct of the appellant. Yanez, 187
S.W.3d at 742 (citing McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989)). (3) 
Intent may also be ascertained or inferred from the means used and the wounds inflicted. 
Id. at 743 (citing Womble v. State, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981)). The
physical and medical evidence presented at trial indicated that Olga died as a result of a
brutal beating. Specifically, the evidence showed that appellant hit Olga enough times and
with enough force to cause severe blunt trauma to her head. The evidence also showed
that Olga was stabbed twenty-nine times, three of which were defensive stab wounds
located on the right side of Olga's palm. Significantly, and indicative of appellant's mental
state, we note that the stab wounds were not inflicted until after appellant beat Olga with
his flashlight, after she fell to the ground, and after appellant realized that he had a knife
with him. Indeed, appellant admits that he initially reached into his pocket to retrieve some
Kleenex to wipe his nose of blood, but upon feeling the knife, he decided instead to use
it. Furthermore, the evidence showed that appellant engaged in conduct designed to
cover up his actions and was dishonest with the police from the very beginning. Given
appellant's conduct, the severity of blunt trauma to Olga's head, and the number of stab
wounds inflicted on her body, we conclude that a jury could reasonably infer that there was
physical evidence showing an intent to kill. See Womble, 618 S.W.2d at 64. 

 Moreover, we find no evidence in the record that would permit a rational jury to find
appellant guilty only of manslaughter. When there is not enough evidence to raise an
issue of reasonable doubt whether the defendant was acting other than intentionally and
knowingly, then no issue on involuntary manslaughter should be given. Zepeda v. State,
797 S.W.2d 258, 265 (Tex. App.--Corpus Christi 1990, pet. ref'd.) (citing Dowden v. State,
758 S.W.2d 264, 271 (Tex. Crim. App. 1988)). We further recognize that appellant's
argument that he lost all control and became enraged as a result of the heated argument
and Olga's condescending comments supports a "sudden passion" instruction that was
properly included in the punishment phase of appellant's trial. See Tex. Pen. Code Ann.
§ 19.02 (d) (Vernon 2003); McKinney v. State, 179 S.W.3d 565, 569 (Tex. Crim. App.
2005). Lastly, appellant's struggle with Olga and his self-serving statement that "the
incident was entirely accidental" is relevant to the defensive issues of accident and self-defense, but such evidence does not support a finding of recklessness. See Schroeder
v. State, 123 S.W.3d 398, 410 (Tex. Crim. App. 2003); Gilbert v. State, 196 S.W.3d 163,
165 (Tex. App.--Houston [1st Dist] 2005, pet. ref'd). 

 Accordingly, we conclude the second part of the test for determining whether a
defendant is entitled to an instruction on a lesser offense is not satisfied. See Rousseau,
855 S.W.2d at 672. There is no evidence that if appellant is guilty, he is guilty only of the
lesser offense. Id. We further conclude that the trial court did not err when it denied
appellant's request for the jury charge to include the lesser offense of manslaughter. Id.;
Zepeda, 797 S.W.2d at 265. Appellant's sole issue is overruled. 

III. CONCLUSION

 Having overruled appellant's single issue, we affirm the judgment. 



 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 22nd day of February, 2007.


1. Rosendo De Leon was charged, by indictment, with the offense of murder in which it was alleged
that he intentionally and knowingly caused Garcia's death by striking her with a flashlight, striking her with his
hand, stabbing her with a knife, and striking her with a motor vehicle. Appellant pleaded "not guilty." 
2. Dr. Salinas also testified to the possibility that Olga was struck by a vehicle, however, he was unable
to identify any distinct fractures that would have indicated that Olga had been run over. Dr. Salinas further
testified that he did not see any evidence to suggest that Olga was pregnant. However, because of the body's
state of decomposition and because it was possible that the pregnancy had been in its early stages, he was
unable to "rule out one hundred percent" that Olga was pregnant.
3. The jury may infer the requisite intent from any facts which tend to prove its existence, including the
acts, words, and conduct of the accused, and the method of committing the crime and from the nature of the
wounds inflicted on the victims. Yanez v. State, 187 S.W.3d 724, 742 n. 13 (citing Manrique v. State, 994
S.W.2d 640, 649 (Tex. Crim. App. 1999) (J. Meyers, concurring); Connor v. State, 67 S.W.3d 192, 197 (Tex.
Crim. App. 2001)). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that
the defendant intended to kill. Id. (citing Adanandus v. State, 866 S.W.2d 210, 215 (Tex. Crim. 199. 1993);
Bell v. State, 501 S.W.2d 137, 138 (Tex. Crim. App. 1973); Guerrero v. State, 655 S.W.2d 291, 292 (Tex.
App.--Corpus Christi 1983, no pet.)).