NUMBER 13-06-572-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


KORAN JOSEPH SMALL, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 27th District Court 

of Bell County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza 


Memorandum Opinion by Justice Rodriguez
 


 Appellant, Koran Joseph Small, was convicted of capital murder. See Tex.
Penal Code Ann. § 19.03 (Vernon 2003 & Supp. 2006). A jury found appellant guilty,
and the trial court sentenced appellant to life imprisonment in the Texas Department
of Criminal Justice-Institutional Division. Appellant raises two issues on appeal: (1)
whether the trial court erred in admitting certain photographs and (2) whether article
37.071(1) of the code of criminal procedure and section 12.31(a) of the penal code
that provide for an automatic sentence of life without parole violated article I, section
19 of the Texas Constitution. See Act approved June 16, 1991, 72d Leg., R.S., ch.
652, § 9, art. 37.071(1), 1991 Tex. Gen. Laws 2394, 2395, amended by Act
approved June 17, 2005, 79th Leg., R.S., ch. 787, § 6, art. 37.071(1), 2005 Tex.
Gen. Laws 2707, 2708; see also Act approved June 19, 1993, 73d Leg., R.S., ch.
900, § 1.01, sec. 12.31(a), 1993 Tex. Gen. Laws 3586, 3602, amended by Act
approved June 17, 2005, 79th Leg., R.S., ch. 787, § 1, sec. 12.31(a), 2005 Tex.
Gen. Laws 2707. We affirm.

I. Background


 Appellant was charged by indictment with the capital murder of Tanya Barnes
and Natasha Deeds. Appellant pleaded not guilty. At trial, the State presented some
of its evidence in the form of photographs. Appellant objected to the admission of
thirteen photographs on the grounds that their probative value was outweighed by
their prejudicial effect. See Tex. R. Evid. 403. The trial court overruled appellant's
objections with respect to the thirteen photographs. The jury found appellant guilty. 

 At the sentencing phase of trial, the State did not seek the death penalty for
capital murder. Therefore, the trial court sentenced appellant to life imprisonment. 
See Act approved June 16, 1991, 72d Leg., R.S., ch. 652, § 9, art. 37.071(1), 1991
Tex. Gen. Laws 2394, 2395, amended by Act approved June 17, 2005, 79th Leg.,
R.S., ch. 787, § 6, art. 37.071(1), 2005 Tex. Gen. Laws 2707, 2708; see also Act
approved June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 12.31(a), 1993 Tex.
Gen. Laws 3586, 3602, amended by Act approved June 17, 2005, 79th Leg., R.S.,
ch. 787, § 1, sec. 12.31(a), 2005 Tex. Gen. Laws 2707. This appeal ensued.

II. Admission of Photographs

 By his first issue, appellant contends that the trial court erred in admitting
thirteen photographs because their prejudicial effect substantially outweighed their
probative value. See Tex. R. Evid. 403.

A. Standard of Review and Applicable Law

 The determination of the admissibility of a photograph pursuant to Texas Rule
of Evidence 403 is left to the sound discretion of the trial court. Paredes v. State, 129
S.W.3d 530, 539 (Tex. Crim. App. 2004) (citing Williams v. State, 958 S.W.2d 186,
195 (Tex. Crim. App. 1997)). "The reviewing court should, using an abuse of
discretion standard, 'do more than decide whether the trial judge did in fact conduct
the required balancing between probative and prejudicial values; the trial court's
determination must be reasonable in view of all relevant facts.'" Shuffield v. State,
189 S.W.3d 782, 787 (Tex. Crim. App. 2006) (quoting Santellan v. State, 939
S.W.2d 155, 169 (Tex. Crim. App. 1997)).

 Texas Rule of Evidence 403 provides that relevant evidence may be excluded
"if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay,
or needless presentation of cumulative evidence." Tex. R. Evid. 403. Several factors
may be considered in determining whether the dangers of unfairness or prejudice
substantially outweigh the probative value of photographs, including: (1) how
probative the evidence is; (2) the potential of the evidence to impress the jury in some
irrational, but indelible way; (3) the time needed to develop the evidence; (4) the need
for the evidence; and (5) other characteristics, such as the number of exhibits offered,
their gruesomeness, their detail, their size, whether they are black and white or color,
whether they are close-up, whether the body is naked or clothed, and whether the
body has been altered since the crime in some way that might enhance the
gruesomeness to appellant's detriment. Shuffield, 189 S.W.3d at 787; Chamberlain
v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (en banc) (citing Emery v.
State, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994) (quoting Long v. State, 823
S.W.2d 259, 272 (Tex. Crim. App. 1991)). 

B. Analysis

 Appellant asserts that State's exhibits 31-33, 46-50, and 52-56 created
dangers of unfairness and prejudice that substantially outweighed their probative value.
We disagree.

 State's exhibits 31-33 depict the victims' skeletal remains as they were
recovered from the excavation site. Appellant contends that these photographs of the
skeletal remains, while still in the ground, were gruesome, introduced only for shock
value, and unnecessary to establish any issue at trial. In response, the State argues
that the photographs were more probative than prejudicial as they were (1) used by
Detective Scott Gillman to explain both the extensive excavation that was required to
reach the remains of the two victims and the advanced state of decomposition of the
remains when they were discovered, and (2) used to lend credibility to the testimony
of Roosevelt Damon, who testified that appellant had told them that he and a friend
had killed two females and buried them in a hole that had been dug. We agree with
the State. Based on the record, we conclude that State's exhibits 31-33 were
necessary for the State in developing its case. We also conclude that the three
photographs, which show that the victims had been buried in the ground, are probative
of appellant's culpable mental state at the time of the commission of the offense. See
Zepeda v. State, 797 S.W.2d 258, 261 (Tex. App.-Corpus Christi 1990, pet. ref'd)
(citing Reimer v. State, 657 S.W.2d 894, 898 (Tex. App.-Corpus Christi 1983, no
pet.) (providing that in murder cases, detailed photographs are relevant to the cause
of death of the victim and are probative evidence of the killer's culpable mental state)). 
Furthermore, while State's exhibits 31-33 are in fact gruesome, we cannot conclude
that the photographs are "so horrifying or appalling that a juror of normal sensitivity
would necessarily encounter difficulty rationally deciding the critical issues of this case
after viewing them." See Macias v. State, 959 S.W.2d 332, 338 (Tex. App.-Houston
[14th dist.] 1997, pet. ref'd) (quoting Fuller v. State, 829 S.W.2d 191, 206 (Tex.
Crim. App. 1992)). 

 State's exhibits 46, 47, 52, and 53 depict the skeletal remains of the two
victims in body bags before the autopsies were performed. Appellant contends that
the prejudicial effect of these photographs outweighs their probative value because the
photographs are "incredibly grotesque," do not show the injuries that caused the
victims' deaths, and had the potential to impress the jury in an irrational but indelible
way in that they showed "the deterioration of the bodies, which had occurred due to
the passage of time and not from the death-causing gunshot wounds." In response,
the State argues that the photographs were more probative than prejudicial because
they established the parameters of the autopsies, given the conditions of the
remains--that is, the photographs showed "why the autopsies would not be able to
establish any injury to tissue, puncture wounds, internal injuries, gun powder burns,
etc." Again, we agree with the State. Jill Urban, M.D., a medical examiner in Dallas
County, testified that the photographs would help in describing what she saw, what
she did, and what she found during the autopsies. During her testimony, Dr. Urban
described the contents of the two body bags, which included the skeletal remains of
the two victims and some of their personal effects. She further testified that the soft
tissue on the bones of the victims "was so decomposed that we really weren't able
to identify any kind of injuries or anything in that material, but we did want to be able
to clear it off - - clean it off so we could get a good look at the bone." Thus, we
conclude that the photographs were probative as they were used by Dr. Urban to
explain the autopsy procedure she followed with respect to victims' remains. In
addition, the photographs were probative as to the condition of the victim's remains,
which explained the inability of the State to provide evidence as to any tissue damage
or internal injuries suffered by the victims. Furthermore, while the pictures may have
been grotesque and in color, we cannot conclude that the photographs were "so
horrifying or appalling that a juror of normal sensitivity would necessarily encounter
difficulty rationally deciding the critical issues of this case after viewing them." See
Macias, 959 S.W.2d at 338 (quoting Fuller, 829 S.W.2d at 206). 

 State's exhibits 48 and 54 depict the victims' skeletal remains laid out on 
autopsy tables. State's exhibits 49, 50, 55, and 56 show the bullet entry and exit
wounds in the cranium of each victim. Appellant contends that the photographs of
the victims' skeletal remains--which do not include a pelvic bone or leg bones, and
which cropped a portion of each skull--and the photographs of the victims' craniums
(1) were introduced to evoke the jurors' emotions, (2) were not necessary to establish
the elements of the State's case, to respond to a defense claim, or to show the cause
of death, and (3) had the potential to impress the jury in an irrational but indelible way
because they showed "the deterioration of the bodies, which had occurred due to the
passage of time and not from the death-causing gunshot wounds." We disagree. 

 Dr. Urban testified that State's exhibits 48 and 54 would help her in describing
what she saw, did, and found during the autopsies. Furthermore, when Dr. Urban was
asked on cross-examination, "[a]nd the bones that we saw really don't tell us anything
about the cause of death, do they?", she responded, "[w]ell, we do see the gunshot
wound to the head." When further asked, "I'm not talking about the cranial photos
and that. But, for example, when you told us that bones in State Exhibit 48, and I
think it was 54, laid out - - that you had cleaned up, that doesn't tell you anything
about the cause of death, does it?", Dr. Urban testified, "[b]esides the gunshot wound
to the head there was no other injury." By using State's exhibits 49, 50, 55, and 56,
Dr. Urban was able to identify the specific entry and exit wounds in the cranium of
each victim. Based on the record, we conclude that State's exhibits 48 and 54 and
49, 50, 55, and 56 were probative of the cause of the victims' deaths and were
necessary to establish the elements of the State's case. Moreover, while the
photographs may have been gruesome and tended to arouse the passions of the jury,
we cannot conclude that they were so prejudicial as to outweigh their probative value. 
See Zepeda, 797 S.W.2d at 261 (citing Purtell v. State, 761 S.W.2d 360, 371 (Tex.
Crim. App. 1988); Martin v. State, 475 S.W.2d 265, 267 (Tex. Crim. App. 1972);
Guzman v. State, 649 S.W.2d 77, 80 (Tex. App.-Corpus Christi 1982, no pet.)
(providing that a photograph is not inadmissible merely because it might be gruesome
or tend to arouse the passions of the jury)).

 Thus, we conclude that the trial court properly admitted the complained-of
photographs. Having concluded that the trial court properly admitted the challenged
photographs, we need not conduct a harm analysis. See Tex. R. App. P. 44.2(b), 47.1. 
We overrule appellant's first issue.

III. Constitutional Challenge


 In his second issue, appellant asserts that article 37.071(1) of the Texas Code
of Criminal Procedure and section 12.31(a) of the Texas Penal Code violate the due
course of law provision of article I, section 19 of the Texas Constitution. See Tex.
Const. art. I, § 19; Tex. Code Crim. Proc. Ann. art. 37.071(1) (Vernon 2006); Tex.
Penal Code Ann. § 12.31(a) (Vernon 2003 & Supp. 2006). Specifically, appellant
contends that the two statutes are violative of article I, section 19, when applied to
the facts of this case, because they allowed the trial court to sentence him "to life in
prison without the possibility of parole, without extending him an opportunity to
present evidence . . . to prove that Appellant should have an opportunity to make
parole." Appellant's Brief at 10 (emphasis added). However, for the reasons that
follow, we conclude that appellant's assertion is without merit.

 Appellant bases his assertion on the version of article 37.071(1) of the code of
criminal procedure and the version of section 12.31(a) of the penal code that became
effective on September 1, 2005 and that applied only to offenses committed on or
after September 1, 2005. See Act approved June 17, 2005, 79th Leg., R.S., ch.
787, §§ 1, 6, 17, 2005 Tex. Gen. Laws 2707, 2708, 2711. Both article 37.071(1)
and section 12.31(a) were amended by the legislature in 2005 to provide for a
sentence of life imprisonment without parole in capital felony cases where the State
did not seek the death penalty. See id. However, because appellant committed the
offense with which he was charged on or about October 30, 2003, the 2005
amendments, modifying the sentence of life imprisonment to be without parole, do not
apply to his case. Instead, we must apply the version of article 37.071(1) and the
version of section 12.31(a) that were in effect at the time of the commission of the
offense in question. 

 The version of article 37.071(1) of the code of criminal procedure in effect at
the time appellant committed the charged offense provided that "[i]f a defendant is
found guilty in a capital felony case in which the state does not seek the death
penalty, the judge shall sentence the defendant to life imprisonment." See Act
approved June 16, 1991, 72d Leg., R.S., ch. 652, § 9, art. 37.071(1), 1991 Tex.
Gen. Laws 2394, 2395, amended by Act approved June 17, 2005, 79th Leg., R.S.,
ch. 787, § 6, art. 37.071(1), 2005 Tex. Gen. Laws 2707, 2708. In addition, the
version of section 12.31(a) of the penal code in effect at the time appellant committed
the offense in question read as follows:

 An individual adjudged guilty of a capital felony in a case in which the
state seeks the death penalty shall be punished by imprisonment in the
institutional division for life or by death. An individual adjudged guilty of
a capital felony in a case in which the state does not seek the death
penalty shall be punished by imprisonment in the institutional division for
life.


See Act approved June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 12.31(a),
1993 Tex. Gen. Laws 3586, 3602, amended by Act approved June 17, 2005, 79th
Leg., R.S., ch. 787, § 1, sec. 12.31(a), 2005 Tex. Gen. Laws 2707. Thus, the
versions of article 37.071(1) and section 12.31(a) in effect at the time appellant
committed the charged offense did not provide for a life sentence without parole. 
Furthermore, pursuant to the version of section 508.145(b) of the government code
in effect at the time of the commission of the offense, an inmate serving a life
sentence for capital murder would be eligible for release on parole when the actual
calendar time the inmate had served equaled 40 calendar years. See Act approved
May 21, 1997, 75th Leg., R.S., ch. 165, § 12.01, sec. 508.145(b), 1997 Tex. Gen.
Laws 327, 425, repealed by Act approved June 17, 2005, 79th Leg., R.S., ch. 787,
§ 12, sec. 508.145(b), 2005 Tex. Gen. Laws 2707, 2710. 

 Here, the jury found appellant guilty of capital murder for an offense that was
committed on or about October 30, 2003. The State elected not to seek the death
penalty. The judgment of conviction shows that the trial court sentenced appellant to
life imprisonment in the TDCJ-Institutional Division. The judgment of conviction also
contains the following language:

 Furthermore, the following special findings or orders apply:


 PAROLE CONDITION: DEFENDANT ORDERED BY COURT TO PAY
COURT COSTS, ATTORNEY FEES, FINES, AND RESTITUTION AS A
CONDITION OF PAROLE.


 Based on the record and the applicable versions of article 37.071(1) of the code
of criminal procedure, section 12.31(a) of the penal code, and section 508.145(b) of
the government code, we conclude that appellant's sentence does not preclude the
possibility of parole. Therefore, we overrule appellant's second issue.

IV. Conclusion

 Accordingly, we affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 16th day of August, 2007.